Green *v.* Marks et al.

on the subject of the alleged usury, and the judgment must be reversed, and the cause remanded.

*Judgment reversed.*

---

Amos Green, Plaintiff in Error, *v.* Henry Marks *et al.,* Defendants in Error.

ERROR TO EDGAR.

A judgment and execution do not create a lien against the homestead of the judgment debtor, and the owner may sell or mortgage it, free from the lien of the judgment.

This was a bill in chancery, filed by Green in the Edgar Circuit Court, to set aside a sale. The bill alleges, that on the 29th day of December, 1859, the defendants caused an execution issued by the clerk of the Edgar Court, on a judgment obtained by them at the October term, 1856, of said court, against one James Gordon, to be levied upon the house and lot of the plaintiff, describing the premises, and that on the 20th day of March, 1860, sheriff William M. Syder, who is also a defendant to the bill, sold said house and lot, and that the said Henry Marks and David H. Lockwood became the purchasers, for the sum of $271, and that unless an injunction was granted for the reasons thereinafter set forth, said defendants would, at the expiration of fifteen months, obtain a sheriff's deed for the said premises.

The bill alleges, that at the time the judgment was obtained, the premises were the homestead of James Gordon, owned by him; that he was the head of a family, residing with the same on said premises; that the judgment was not for purchase money due, nor for improvements made on the premises, and that the debt on which said judgment was obtained, accrued and was contracted after and since the 4th day of July, 1851; that there was a mortgage on said premises to one Sarah Paddock, for the sum of one thousand dollars, for purchase money on the same; that said mortgage was made and executed, and recorded long prior to the judgment obtained by said defendants against said Gordon, and had priority over it; that said house and lot, over and above said mortgage, was not worth more than one thousand dollars; that Gordon continued to hold and occupy it as his homestead, claiming as such until the —— day of ——, when he sold and conveyed the same to the plaintiff, who assumed to pay said mortgage, which still remains on the same, and unsatisfied; that since then, the plaintiff, being the head of a family, residing

with the same, has occupied said premises as his homestead, and was so occupying them at the time of the sale, and notified the sheriff of the same; that the said house and lot, over and above said mortgage, is not worth more than one thousand dollars; that it is and was exempt from levy and sale under the statute; and prays for an injunction, and on final hearing that the sale be set aside.

The defendants filed a general demurrer to the plaintiff's bill, which the court sustained, and dismissed the bill; to which the plaintiff at the time excepted, and prosecutes this writ of error.

The errors assigned are, that the ruling of the court in sustaining said demurrer and dismissing the plaintiff's bill, was contrary to law, etc.

A. GREEN, for Plaintiff in Error.

S. P. READ, for Defendants in Error.

WALKER, J.   This record presents the question, whether the homestead of a debtor remains exempt from sale on execution in the hands of his grantee.   The first section of the act of February 11th, 1851, (Scates' Comp. 576), provides, " That in addition to the property now exempt by law from sale on execution, there shall be exempt from levy and forced sale, under any process or order from any court of law or equity in this State, for debts contracted from and after the fourth day of July, A. D. 1851, the lot of ground and the buildings thereon, occupied as a residence, and owned by the debtor, being a householder, and having a family, to the value of one thousand dollars."   Does the judgment become a lien upon the homestead, which is postponed by the operation of the statute, until any of the conditions cease to exist, that creates the lien, or does the statute fail to create such a lien?   If the judgment operates from the time it is rendered as a lien, it is obvious that no act of the debtor can defeat it, but a discharge or satisfaction of the judgment.

By this enactment, the debtor, falling within its provisions, is required to perform no act, to discharge no duty, or even manifest any intention to avail himself of its benefits.   The law casts it upon him, but at the same time has provided the means by which he may, if he shall choose, waive that benefit.   But until he does so, or until some one of the circumstances, which is essential to the operation of the statute, ceases to exist, the exemption continues by its own force.   But when the law has cast this exemption upon the debtor, it will be discharged from that condition, when the debtor ceases to occupy it as a residence, shall cease to have a family, or shall release or waive it

in writing, subscribed and acknowledged by him in the same manner in which deeds are required by law to be acknowledged. The question recurs, when the lien, if ever, attaches to such property.

At the ancient common law, lands were not the subject of sale for the payment of debts. But by various statutes, different kinds of execution from time to time were given, by which the profits of the land of the debtor, might be seized and applied in discharge of the judgment. Of these was the writ of *levari facias;* by which the goods of the debtor, and the profits of his lands, were seized to satisfy the judgment. Then followed the Statute of Westm. 2, 13 Edw. 1, c. 18, by which was given the writ of *eligit*. By it the plaintiff, if he so elected, might have the goods of the defendant at their reasonable appraised value, in part satisfaction of his debt. If they were insufficient to satisfy the debt, the moiety of his freehold lands which he had at the time of the judgment rendered, were also delivered to the plaintiff, to hold, until out of the rents and profits the debt was levied. Then followed the statute merchant and statute staple, which gave an execution in certain cases, against the body, lands and goods, to compel the payment of the debt, which was known as an *extent* or *extendi facias*. Under this latter writ, the whole of the defendant's lands were appraised to their full extended value, before they were delivered by the sheriff to the plaintiff, to be held until he had satisfaction, by the rents and profits as found by the appraisement.

If lands may be seized and sold in Great Britain, under a *fi. fa.*, it is by virtue of a modern statute, which has never had any operation in this State, and not by means of the common law. It may be safely asserted that the right as it exists in this State is only from the enactment of our legislature, and is regulated entirely by its provisions. The judgment lien upon lands, then, being conferred by statute alone, and not as a common law right, it can only attach and become effective in the mode, at the time, and upon the conditions and limitations imposed by the statute itself. Our statute is not in aid of a common law right to sell real estate, but it confers the right. If the statute creating the lien, and subjecting the title to real estate to sale on execution, were repealed, then this remedy would be entirely at an end, as those old English writs, which have gone entirely out of use, only subjected the rents and profits, of a part or the whole of the land, for a limited period, to be delivered to the plaintiff in satisfaction. But by none of them could the debtor be divested of his title.

This statute is silent as to any lien on the homestead. The third section, it is true, authorizes the creditors or the officer

having an execution, if they believe the property to be of greater value than one thousand dollars, to have it appraised, and if it is so found, to have so much of the premises, including the dwelling, set off for the debtor if susceptible of division, as may be worth that sum, and authorizes the sale of the remainder. The fourth section provides that, if it is found to be of a greater value than that amount, and not susceptible of division, then notice shall be given to the debtor, that unless he pay such surplus to the officer within sixty days, the property will be sold. The fifth section authorizes such a sale unless the surplus, or the execution is paid, provided it sells for more than one thousand dollars. And when a sale is thus made, the officer is required to pay the one thousand dollars to the debtor, which shall be exempt from execution for one year thereafter, and to apply the balance on the execution. And if there is not more than one thousand dollars bid when the property is thus offered, the officer is authorized to return the execution for want of property.

The legislature have manifested in an unmistakable manner, the design to secure the debtor, and his family after his death, in the enjoyment of a home. They have carefully guarded the right, when the tract of land is of greater value than the amount of the exemption, by having the homestead of that value set off to him, if susceptible of a division, and if not, then on a sale one thousand dollars is required to be paid to him. Nor does the statute stop here, as it exempts this money from the payment of his debts for one year, that he may have ample time to secure him another home. The whole tenor of the act seems to be, to preserve this benefit, unless he shall deliberately abandon it. And if a liberal provision had not been designed, it occurs to us, that such studious care would not have been manifested, to guard and protect this right. The framers of the law were doubtless familiar with the decisions of this court, which held, that under the law exempting sixty dollars' worth of property, suitable to the condition of the debtor, he cannot select any article of a greater value than that amount, and retain it, by paying the surplus, but by this enactment have provided against the loss of the homestead to the debtor, in case it is of greater value than the exemption.

In the case of *Cole* v. *Green*, 21 Ill. 104, we held, under the act exempting certain chattels from sale on execution, etc., as to such property no judgment, execution, or attachment, can exist. That the judgment creates no lien on such property, and the execution creates no power over it. It, by the law, is placed beyond the reach of either, unless it is by the voluntary affirmative act of the owner. That the law will only recognize it for the protection of the owner in its enjoyment. And that

he might sell or mortgage it, and thus bring it within the influence of the law regulating the transfer of property, but in doing so, the purchaser or mortgagee acquires title as free from the judgment and execution as it existed in the hands of the debtor.

In each of the acts making these exemptions it appears to us, that the legislature intended, not only to free it from liability to sale, but from all lien, while the debtor is in the position to claim the benefits of the statute. Under this act, it leaves the parties as they were at the common law. And under this statute, the defendant holds the homestead exempt, as though the judgment had never been rendered, or the execution had never issued. They created no lien, as the law has placed it beyond their reach, and as in the case of personal property, the owner may sell or mortgage it, free from a lien of the judgment.

It then follows, that if the debtor ceases to be the owner, before any lien has attached, the purchaser acquires it, free from liability to the judgment. And when the property has thus vested in him, no liability can attach to it, in his hands, for the debt of his grantor. It not being under a lien or liable to sale, when he purchased, he must acquire and hold it, in the same condition. After the debtor conveyed, he ceased to have any interest liable to execution. The decree of the court below must, therefore, be reversed, and the cause remanded.

*Decree reversed.*