# WILLIAM WIGGINS

*v.*

# JOSEPH CHANCE.

1. TRESPASS *upon land.* Although the land of a party still in the occupancy thereof, has been sold under execution, and the title passed to the purchaser thereunder, still, that does not authorize a stranger, in no way connected with such title, going upon the land and cutting timber, and if he does so, the former owner, still in possession, may maintain trespass against him.

2. HOMESTEAD—*sale thereof under execution—when void.* Where premises occupied as a homestead are of value not exceeding $1000, they are not subject to levy and sale under execution against the owner; and should premises thus situated, be sold under such process, and, there being no redemption, a sheriff's deed made to the purchaser, no title will pass thereby. The sale would be void.

3. SAME—*abandonment—its effect upon such a sale.* Even an abandonment of the homestead by the owner, after the execution of the sheriff's deed, would not operate to render the void sale a valid one, and the purchaser could claim nothing by reason of such abandonment.

4. SAME—*what constitutes an abandonment.* A judgment debtor owning a homestead and residing thereon, rented the premises for three years, and removed from them with his family, in the fall of the year, to a town in the same county, for the purpose of earning money to pay his debts, but with the intention of returning, and did return the following spring, and resume the occupancy of his homestead with his family: *Held,* there was no abandonment of the homestead.

APPEAL from the Circuit Court of Marion county; the Hon. SILAS L. BRYAN, Judge, presiding.

One of the questions arising in this case is, whether the owner of premises which he had occupied as a homestead, had abandoned the same in such manner as to lose his homestead right  The testimony on that subject was as follows:  One Nicholson, called by the party resisting the homestead claim, testified that the owner of the premises rented them to him in 1862, for three years, and in the fall of that year moved with

his family to Centralia, a town in the same county, and returned, resuming his occupancy of the premises the next spring; that when he spoke of going to Centralia, he said he was going there to earn some money to pay his debts. The witness did not reside upon the place at all, and cultivated it only one year.

*Joseph Chance,* the owner of the premises, testified, that when he moved to Centralia he had no intention of abandoning his homestead, but went to make money to pay his debts, intending to return; that he did return to his homestead, and had occupied it since.

This temporary absence of the owner from his homestead, was subsequent to a sale of the premises under an execution against him, and the execution of a sheriff's deed to the purchaser, and it was in favor of such purchaser that it was claimed the homestead was abandoned.

The other facts in the case are set forth in the opinion of the court.

Mr. B. B. SMITH, for the appellant.

Mr. W. W. WILLARD and Mr. JAMES S. JACKSON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action brought before a justice of the peace, for a trespass to land by cutting timber. The case was appealed to the circuit court. A jury having been waived, a trial was had by the court by consent, when the court rendered a judgment in favor of appellee, for five dollars and costs.

It appears that appellee entered the land in 1854, and has occupied it since that time, except a short period when he was absent laboring to earn money to pay his debts, but intending to return again, which he did. It appears that the two tracts lie adjoining, and a part of each is under fence, and was occupied as a homestead by appellee, and that the property was not worth more than $1000 at the time of the levy and sale.

The evidence shows that one Isaac Garrison recovered a judgment against appellee, on the sixteenth day of July, 1858, before a justice of the peace, for the sum of $16.20, and costs of suit; that an execution was issued and returned "no property found," when a transcript was filed in the circuit clerk's office of Marion county; that on the sixteenth day of June, 1859, an execution was issued on the transcript, directed to the sheriff to execute; that it was levied on the S. E. N. E¼ of section 2, T. 1, N. R. 4 E. 3 P. M. The land was sold by the sheriff and Garrison became the purchaser, and no redemption having been made, he afterwards received a sheriff's deed for the same.

Appellant went upon the land and cut a number of small trees. While so engaged, appellee saw him and forbid his cutting the timber, but he claimed to have purchased the land of Garrison. It was proved that, when the deputy sheriff went to levy the execution, appellee said he had no property to surrender on the execution; that the officer asked if he did not have land, and he replied he had the land he lived upon, and the deputy sheriff says that he asked appellee to turn it out, and he assented, and gave the numbers. On the other hand, appellee swears that the deputy sheriff only asked for the numbers, which he furnished.

The judgment in this case must be affirmed. Appellant has in no manner connected himself, so far as we can see, with Garrison's title, either as his grantee, or his servant or employee. Even if Garrison acquired title, that did not authorize appellant to enter upon the land in the possession of appellee, and to cut timber. He does not justify, in any manner, under Garrison's title, and his mere declaration that he had purchased from Garrison, does not prove that fact.

But inasmuch as other questions have been presented and argued by counsel, we choose to dispose of them. The evidence shows that this land was a part of appellee's homestead, when the levy and sale were made, and the whole property was worth less than $1000; and there is no pretense that the homestead

right was waived or released in the mode prescribed by the law. In the case of *Green* v. *Marks*, 25 Ill. 221, it was held that the law exempted the homestead of the debtor from levy and sale on execution, and they created no lien on the homestead while the debtor was in a position to claim the benefits of the law.

In the case of *Stevenson* v. *Marony*, 29 Ill. 534, it was held that when the homestead is sold, and the debtor is in a position to claim the benefit of the act, he may have the levy and sale set aside. And in the case of *Fishback* v. *Lane*, 36 Ill. 437, it was held that the grantee of the debtor held the land, as against a prior judgment, which would have been a lien had it not been for the homestead law; and that case was based upon the prior case of *Bliss* v. *Clark*, but not reported until the 39 Ill. 590, and upon *Green* v. *Marks*, *supra*. It is manifest, from those cases, that there was no lien created on this homestead by issuing the execution, the levy or the sale, and that the sale was void, and passed no title to Garrison. He or appellee could have applied to the court and had the levy and sale set aside, as nothing was acquired thereby.

It is urged that appellee, subsequently to the sale, abandoned the premises by removing from them for some months, and by leasing the place. He swears he only left to earn money to pay his debts, intending to return and continue it as his home, which he did, and nothing is found in the record to rebut this evidence. But even admitting that he did not intend to return, how is the case changed? If the levy created no lien, and the sale transferred no title, how could appellee's subsequent abandonment render this void sale valid? How could it impart vigor to the sale and conveyance by the sheriff, which was unauthorized, and conferred no title? We are at a loss to perceive how appellee's position could be thus changed. Failing to perceive that appellant had shown any defense, we must hold the court below acted correctly in rendering the judgment, and it must be affirmed.

*Judgment affirmed.*