MARTHA SHEAHAN, Defendant in Error, *vs.* JOHN JOSEPH MADIGAN *et al.* Plaintiffs in Error.

*Opinion filed October 24, 1916—Rehearing denied Dec. 7, 1916.*

1. JUDGMENTS AND DECREES—*rule as to collateral attack.* Judgments and decrees, however erroneous, of courts having jurisdiction are final and conclusive between the parties until reversed in a direct proceeding in the manner provided by law and cannot be attacked collaterally, but a judgment or decree rendered by a court having no jurisdiction to hear and determine the case is an absolute nullity and may be attacked at any time and in any proceeding.

2. SAME—*the rule that judgment cannot be attacked collaterally applies to county courts.* The rule that judgments and decrees of courts having jurisdiction cannot be attacked collaterally applies in all its force to the county court, which has general jurisdiction of probate and administration matters, and its order of sale of real estate to pay debts cannot be attacked collaterally except for want of jurisdiction.

3. HOMESTEAD—*section 9 of act relating to exemptions does not apply to sale with consent of owner of homestead right.* Section 9 of the statute relating to exemptions, which provides that a sale on decree or execution of homestead property shall be void if the value of the homestead is less than $1000, does not apply to a sale with the written consent of the owner of the homestead, who consents to be paid in money.

4. JUDICIAL SALES—*county court has jurisdiction to sell land to pay debts although incumbered for all its value.* The county court has jurisdiction, with the consent of the mortgagee and the widow, to order a sale of lands by the administrator disincumbered of mortgage, homestead and dower rights, and an order approving such a sale, which brings no more than the mortgage debt and produces nothing for the creditors of the estate, even though it may be erroneous, is within the exercise of the jurisdiction conferred by law and cannot be attacked collaterally.

5. EQUITY—*when a cause is heard on bill and answers the answers are to be taken as true.* Charges of fraud and collusion in a bill to set aside a deed are not sustained where the answers deny such charges and where the cause is heard on bill and answers, since the answers are to be taken as true, and there can be no fraud in such a case unless the proceedings of record set out in the bill and admitted by the answers constitute fraud in law.

WRIT OF ERROR to the Circuit Court of Boone county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

WILLIAM L. PIERCE, CHARLES W. FERGUSON, and P. H. O'DONNELL, for plaintiffs in error.

EDWARD D. SHURTLEFF, and R. K. WELSH, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Martha Sheahan, the defendant in error, filed her bill in the circuit court of Boone county against John Joseph Madigan, Daniel Hogan in his own right and as executor of the will of Catherine Hogan, deceased, the plaintiffs in error, and others, praying the court to set aside an administrator's deed executed to Catherine Hogan on January 27, 1892, by virtue of a decree of the county court of that county, and for partition of the premises described in the deed between herself and Daniel Hogan. Elizabeth L. Stires, a mortgagee, who was made a defendant, filed an answer setting up her rights and filed a cross-bill for the foreclosure of her mortgage. The defendants to the cross-bill were defaulted, and the defendants to the original bill, except John Joseph Madigan, Daniel Hogan and Elizabeth L. Stires, were defaulted. The complainant in the original bill did not file any replication to the answers, and on her motion the cause was set for hearing on the bill and answers and the cross-bill taken as confessed. The chancellor granted the relief prayed for by the original bill and entered a decree setting aside the deed and ordering partition of the premises between the complainant, Martha Sheahan, and the defendant Daniel Hogan, subject to the mortgage indebtedness and a balance due to Catherine Hogan, deceased, on her widow's award, and subject to debts and unpaid claims against the estate of Thomas Hogan, deceased. The decree also fore-

closed the mortgage as prayed in the cross-bill, and provided that unless the amount due should be paid within ninety days the premises should be sold to satisfy the mortgage debt. The plaintiffs in error sued out a writ of error from this court and have assigned for error the findings and decree entered on the original bill.

The facts are to be ascertained from the averments of the bill so far as admitted by the answers to be true, from which the following facts appear: Thomas Hogan was the owner of 160 acres of land in Boone county, which was occupied as his homestead. He died intestate on January 17, 1889, leaving Catherine Hogan, his widow, Martha Hogan (now Martha Sheahan, the complainant,) and Daniel Hogan, one of the defendants, then fifteen and thirteen years of age, respectively, children of his marriage with Catherine Hogan, and three children of a former marriage, his only heirs-at-law. Catherine Hogan had also been previously married and had four children of her first marriage,—John Joseph Madigan, (one of the defendants,) Catherine Madigan, Jeremiah Madigan and Frank Madigan. On March 13, 1889, letters of administration were issued by the county court of Boone county to Catherine Hogan, and she qualified and filed an inventory of the property of the estate. The personal property was appraised at $997.85 and she was allowed a widow's award of $950. Two mares appraised at $101 were mortgaged and taken under the mortgage, so that they were lost to the estate, and she took the remainder of the personal property at the appraised value of $896.85 to apply on her award, leaving a balance of $53.15 due her. Claims were allowed against the estate, and on August 22, 1891, she filed her final report showing the unpaid claims against the estate and resigned as administratrix. Her report was approved by the court and she was discharged, and William Knapp was appointed administrator *de bonis non* and qualified as such. He filed an inventory fixing the value of the land at $7200,

and stated that the chattel property had been administered and taken by the widow upon her award, leaving a balance due. He also filed a petition for leave to sell the real estate to pay debts, containing everything necessary to give the court jurisdiction. There was a mortgage on the premises, and the mortgagee, Nathaniel Brown, was made a defendant, together with Catherine Hogan, the widow, Martha Hogan, (now Martha Sheahan, the complainant,) and the other heirs-at-law. They were all served with process in the cause and were all adults except the defendant Daniel Hogan, for whom the court appointed a guardian *ad litem,* and the guardian filed a formal answer. The mortgagee filed his written consent that the lands might be sold disincumbered from the mortgage, and Catherine Hogan, the widow, consented, in writing, to a sale of the premises free and clear from all dower and homestead estates and to take the value thereof in money. The mortgage was for purchase money and was executed by Thomas Hogan and Catherine Hogan, and her homestead and dower rights were in the excess, if any, above the mortgage debt. The administrator gave a bond in accordance with the statute, which was approved by the county court and a decree was entered authorizing him to sell the premises. On January 16, 1892, the administrator, after giving notice of the sale, sold the premises at public auction to Catherine Hogan, the widow, for $6071.01, which was the highest and best bid made at the sale. The sale was made free and clear of the lien of the mortgage to which the homestead and dower interests were subject and free and clear of the homestead and dower interests in the excess. The amount of the bid was the exact amount due on the mortgage. The administrator reported the sale to the county court and stated that the costs of the administration of the estate and the costs of the sale had been paid by Catherine Hogan. The county court approved the sale and ordered the administrator to execute a deed, which he did on January 27, 1892. The

deed was recorded on January 29, 1892, and Catherine Hogan remained in possession of the premises until her death, claiming them as her own.  On the same day that the deed was executed Catherine Hogan borrowed from Elizabeth L. Stires, the complainant in the cross-bill, $5880, and with that money and funds of her own she paid the amount of the bid to the administrator.  The farm at the time of the sale was worth $7000,—something less than the amount of the homestead exemption above the mortgage.  The mortgage to Elizabeth L. Stires was renewed on January 27, 1897, and it had all been paid by Catherine Hogan with the exception of a balance of $650.50.  The final report of the administrator was filed on June 1, 1892, and he was discharged, showing the estate insolvent.  Catherine Hogan died on January 29, 1915, leaving a last will and testament, by which she made various bequests, including one of $1000 to the complainant, Martha Sheahan, and devised the rest of her property to her sons, John Joseph Madigan and Daniel Hogan, and appointed Daniel Hogan executor.  Other heirs of Thomas Hogan quit-claimed their interests to Martha Sheahan.

The substantial claims in support of the decree, as stated by counsel, are, that the administrator's deed to the widow was a nullity for want of jurisdiction in the county court, or if the deed was only voidable and operated to convey title, the title which was conveyed inured to the benefit of the heirs of Thomas Hogan and was held by Catherine Hogan in trust for herself and them.  In support of the assignment of errors counsel contend that the proceeding by which the real estate was sold, and the sale and deed, were valid; that Catherine Hogan had title by the statutes of limitation; that complainant was guilty of *laches* barring her right to relief, and that there was no trust involved.

Counsel on each side have furnished the court with exceedingly comprehensive briefs and arguments covering every question which they deem material in the case and

manifesting research and learning, but it will not be necessary to give attention to all of them in an opinion disposing of the case. The suit was a collateral attack upon the judgment of the county court, and the question which lies at the foundation is whether the decree, upon the facts alleged, was subject to collateral attack.

A judgment rendered by a court having no jurisdiction to hear and determine the case is an absolute nullity and may be attacked at any time and in any proceeding. (*Demilly* v. *Grosrenaud,* 201 Ill. 272.) Where a court has jurisdiction of the subject matter and the parties its judgments or decrees cannot be questioned collaterally, no matter how erroneous they may be. (*Spring* v. *Kane,* 86 Ill. 580; *Swiggart* v. *Harber,* 4 Scam. 364; *Marsh* v. *Irwin,* 168 Ill. 50; *Stempel* v. *Thomas,* 89 id. 146.) The judgments and decrees of courts having jurisdiction are final and conclusive between the parties until reversed in a direct proceeding in the manner provided by law, and they are immune from collateral attack. The immunity rests upon the power to hear and determine the cause, and it is not affected by any error, however gross. The rule applies in all its force to the county court, which has general jurisdiction of probate and administration matters, and its judgments and decrees are not subject to review by the circuit court, collaterally, for error. In *Iverson* v. *Loberg,* 26 Ill. 179, the county court had ordered a sale of real estate to pay debts on the petition of an administrator, and the judgment was attacked collaterally in an action of ejectment. It was agreed by a statement of facts that the personal estate was sufficient to pay all just claims against the estate and the statute only authorized a sale where the personal estate was insufficient, but it was held that whatever was done was not in the exercise of usurped power but in one conferred by law, and although the court exercised the power erroneously, its orders and decisions were binding until reversed. In *Moffitt* v. *Moffitt,* 69 Ill. 641, it was held that

the county court, when acting within the sphere of its jurisdiction, is not to be regarded as an inferior court, and when, exercising such jurisdiction, it orders the sale of real estate to pay the debts of deceased persons, its decree in a collateral proceeding can only be attacked for want of jurisdiction.

The county court had jurisdiction of the persons in the proceeding to sell the real estate, and the jurisdiction of the complainant, who was an adult, was obtained by personal service upon her. That jurisdiction is not questioned, but the argument of counsel to sustain the collateral attack is, that the sale was void because the land did not sell for more than $1000 above the amount of the incumbrances and nothing was paid on the debts of the estate. To maintain that position section 9 (chapter 52) of the act exempting homesteads from attachment, judgment, levy or execution, or from sale for the payment of the debts of the householder, is relied upon. By that act Thomas Hogan, being a householder, had an estate of homestead in the land to the amount and value of $1000, if there was an estate of that value above the incumbrances, and the exemption continued after his death for the benefit of his wife surviving so long as she continued to occupy the same and of the children until the youngest child should become twenty-one years of age. The act provides for setting off the homestead if the value of the premises exceeds the exemption, and if they are not divisible a sale may be made and the amount of the exemption be paid to the person entitled to the homestead. Section 9 provides that no sale shall be made of homestead premises on a decree or execution unless a greater sum than $1000 is bid therefor, and an execution sale of a homestead worth less than $1000 is void. (*Wiggins* v. *Chance,* 54 Ill. 175; *Oettinger* v. *Specht,* 162 id. 179; *Atherton* v. *Hughes,* 249 id. 317; *Mueller* v. *Conrad,* 178 id. 276.) A creditor can take nothing, so long as the homestead estate exists, unless the premises subject

to an execution or a decree are worth more than $1000. But a homestead is not necessarily worth $1000 or any particular sum. The land itself may be of trifling value and the dwelling a mere shelter for the family, worth very little. The homestead exemption in mortgaged land may amount only to a small fraction of $1000, or there may be no estate at all to which it can attach where the premises are worth no more than the mortgage debt. Under the statute, premises in which there is a homestead estate cannot be sold on decree or execution to satisfy debts of the householder unless enough is bid to satisfy the homestead claim, but the statute could not apply to a case where a party entitled to homestead files a consent in writing that it may be sold and the value of it, although much less than $1000, shall be paid in money. In this case the premises were worth $7000, which was less than the amount of the statutory exemption above the amount due on the mortgage. To say that land could never be sold with the consent of one having a homestead estate unless such estate was of a value of more than $1000 would not be in harmony with the statute. The county court had jurisdiction to order the sale of the lands disencumbered of the mortgage and homestead and dower rights, but when put to the test of a sale the lands brought no more than the amount of the incumbrance. The court approved the sale and report of the same and ordered the conveyance, and whether or not the court erred in approving the sale, which produced nothing for the payment of debts, the order was in the exercise of the jurisdiction conferred by law. The purchaser was content, although it appeared from the sale that the land was worth no more than the mortgage debt. The judgment was binding upon the parties and not subject to collateral attack.

The bill charged fraud and collusion between Catherine Hogan and her attorney and the administrator to enable her to secure title to the land and alleged ignorance on the part of the complainant of the nature of the proceedings

or their intent and purpose, but the answer denied every such charge and allegation, and the cause having been heard on the bill and answers the answers were to be taken as true. (*Derby* v. *Gage*, 38 Ill. 27; *Fordyce* v. *Shriver*, 115 id. 530; *Roach* v. *Glos*, 181 id. 440.) It must be held, therefore, that there was no fraud, unless the proceedings of record set out in the bill and admitted by the answers constituted fraud in law. That could only be so if every purchase of lands of an estate by a widow who is not an administratrix and occupies no trust relation to the heirs-at-law or creditors constitutes a fraud upon them. That is not the law and counsel do not contend that it is. The land was worth $7000, which was not equal to the incumbrance and the homestead estate, and if it had been sold for its full value no creditor would have received anything. The bill alleged, and it was admitted by the answers, that the land being heavily incumbered it was a question with Catherine Hogan, the widow, how the property could be saved, and that she expressed an intention to save it for herself and the children by the proceeding in the county court. She paid with her own money the balance of her bid above the amount of the mortgage which she made to Elizabeth L. Stires, and no money or property of the complainant or her grantors was used for that purpose. After Catherine Hogan bought the land she was entitled to the rents and profits, and she paid the mortgage with the exception of $650.50, which remained due. It was her purpose to preserve her home, and naturally she included the children in the expression of her hope and intention, but no trust relation was created.

The decree is reversed and the cause remanded, with directions to dismiss the original bill, retain the cross-bill, and extend the time for payment of the mortgage debt ninety days from the entry of the decree under the remanding order.

*Reversed and remanded, with directions.*