BLACK *v.* CURRAN.

1. Under the homestead laws of Illinois, the homestead right is not in an absolute sense an estate in the land. The fee is left as it was before the statutes, subject to a right of occupancy, which cannot be disturbed while the homestead character exists.

2. The disposition of the property by judicial sale is accordingly left unaffected, except so far as is necessary to secure a homestead for the family of the occupant.

3. Hence the land in fee can be sold under execution, subject to the homestead right, and the purchaser has the absolute title when the homestead right ceases.

ERROR to the Circuit Court for the District of Illinois; the case being thus:

The statutes of Illinois* relating to homesteads enact:

"SECTION 1. . . . There shall be exempt from levy and forced sale, under any process or order from any court in this State, for debts contracted, *the lot of ground and buildings thereon*, occupied as a residence, and owned by the debtor, being a householder and having a family, to the value of $1000. Such exemption shall continue after the death of such householder, for the benefit of the widow and family, some or one of them continuing to occupy such homestead, until the youngest child shall become

---

* Laws of 1851, p. 25; Chapter 48 Gross's Statutes, p. 327, amended by act of February 17th, 1857; Act of 1857, p. 119.

21 years of age, and until the death of such widow, and no release or waiver of such exemption shall be valid unless the same shall be in writing subscribed by such householder and his wife, if he have one, and acknowledged in same manner as conveyances of real estate are by law required to be acknowledged.

"SECTION 3. If in the opinion of the creditors or officer holding an execution against such householder, the premises claimed by him or her as exempt, are worth more than $1000, such officer shall summon six qualified jurors of his county, who shall appraise said premises, and if, in their opinion, the property may be divided without injury to the interest of the parties, they shall set off so much of said premises, including the dwelling-house, as in their opinion shall be worth $1000, and the residue of said premises may be advertised and sold by such officer.

"SECTION 4. In case the value of the premises shall in the opinion of the jury be more than $1000, and cannot be divided as provided for in this act, they shall make an appraisal of the value thereof, and deliver the same to the officer, who shall deliver a copy thereof to the execution debtor, with a notice thereto attached that unless the execution debtor shall pay to said officer the surplus over and above $1000, on the amount due on said execution, within 60 days thereafter that such premises will be sold.

"SECTION 5. In case such surplus, or the amount due on said execution, shall not be paid within the said 60 days, it shall be lawful for the officer to advertise and sell the said premises, and out of the proceeds of such sale to pay to such execution debtor the said sum of $1000, which shall be exempt from execution for one year thereafter, and apply the balance on such execution, provided that no sale shall be made unless a greater sum than $1000 shall be bid therefor, in which case the officer may return the execution for want of property."

With this statute in force one Craddock, the head of a family, was from 1853 till 1863 the owner of a lot in Illinois which constituted his homestead; his house being built on one half; and the other half, exceeding in value $2000, being used for its necessary purposes; both halves alike, however, constituting, as was assumed by the court, the homestead of himself and family.

In 1858, one Spear obtained a judgment against Craddock, but although the homestead property was sufficient to pay his demand and set off to the debtor what he was entitled to under the law, Spear did not pursue any of the modes pointed out by the statute of obtaining satisfaction of his property, but caused the western half to be sold at sheriff's sale under his execution, and having obtained a sheriff's deed for this half conveyed it to one Curran.

Subsequent to this, that is to say, in 1863, Craddock and wife conveyed the whole lot, east and west halves alike, in fee simple by deed with full covenants releasing the homestead, and properly acknowledged, to certain persons who subsequently conveyed to one Black. In two weeks after Craddock and his wife thus conveyed the premises, Craddock with his family removed from them and ceased to occupy them afterwards.

In this state of things, A.D. 1866, Curran claiming title through the judicial sale to Spear brought suit against Black for the west half of the lot; Black defending himself under the title, if any, acquired under the deed from Craddock and wife to his vendors.

The court below, relying, as was said here by counsel, on *McDonald* v. *Crandall* and *Coe* v. *Smith*, decisions in the Supreme Court of Illinois,* and considering that the sheriff could levy on and sell and convey a part of the homestead lot, while in occupancy of the judgment debtor, and that the deed would take effect if the debtor and his family abandoned the homestead, adjudged that the plaintiff was entitled to the property claimed by him, that is to say the western half of the lot, in fee simple, and gave judgment accordingly. That judgment was now here for review.

*Mr. Lyman Trumbull (a brief of Messrs. Stuart, Edwards, and Brown being filed on the same side) for the plaintiff in error:*

Assuming that the facts show the occupation of the entire lot as a homestead, does the plaintiff show any title to the

---

* 43 Illinois, 231, and 47 Id. 225.

premises? To recover, he must show a valid execution, a regular levy, and an authorized sale. Now, here none of the requisitions of the law were complied with. Assuming the lien to exist and the premises to exceed in value the sum of $1000, how is this lien to be enforced? The act provides in detail the manner, time, and circumstances under which levy and sale can be made. These provisions are mandatory, prerequisite to the right to sell. They are, by the decision of the Supreme Court, *prohibitory* of a sale in any other way.*

But by the decisions of the Supreme Court of Illinois, which are the rule in this matter for the Federal court, a judgment and execution do not create a lien against the homestead of the judgment debtor, and the owner may sell or mortgage it free from the lien of the judgment. This is emphatically declared in *Green* v. *Marks*,† a leading case on this matter, and the doctrine of that case has been affirmed by the Supreme Court of the State in a series of decisions.‡ As a rule of property it has existed for ten years. Titles to many valuable tracts and lots of land have been acquired on the faith of this construction. The title of the grantors of plaintiff in error was so obtained in 1863. The judgment in this case unsettles these titles and prescribes a different rule. We submit that, both on principle and the authorities of every State having homestead laws, the doctrine asserted by the court below (that without complying with any of the terms of the homestead law, and in a mode not pointed out by the law, the sheriff can divide the homestead lot, levy on part, sell and convey it, while in the occupancy of the judgment debtor, and that the deed so made will convey title to take effect when the occupation by the debtor of the lot ceases) is in effect a judicial repeal of the law.

The authority to sell is derived confessedly but from the statute. What is it that is exempt from sale? Not some ideal homestead-right estate, leaving another imaginary reversionary interest which can be subjected to the debts of

---

* Bliss *v.* Clark, 39 Illinois, 596–7.                    † 25 Id 221.

‡ Bliss *v.* Clark, 39 Id. 590; Ives *v.* Mills, 37 Id. 76; Hume *v.* Gossett, 43 Id. 297; Pardee *v.* Lindley, 31 Id. 187.

the occupant.    The exemption from levy and forced sale, is of "*the lot of ground and buildings.*"  The *thing* out of which, about, and in which, all the different kinds of estate arise, cannot be levied on or sold except in the mode provided. If the *lot* is exempt from levy and sale every conceivable estate in and to said lot must also be exempt.    It is no answer to say that the exemption is only to the value of $1000, for the reason that the provisions are by the statute made to apply only where, in the opinion of the creditor, the premises exceed in value $1000 : then, and then only, can he demand through the sheriff a jury to ascertain the value and divisibility of the premises, and upon notice to the judgment debtor, after the expiration of 60 days, may he sell. By the proviso to the 5th section, no sale can be made unless more than $1000 shall be bid.   The carefully defined provisions to protect the judgment debtor in his homestead right in a case where, in the opinion of the creditor, the value of the lot exceeds $1000, the court below has decided are not necessary in the only possible case in which they could have any application.

By making these provisions in all cases essential no one can be injured.   If the premises are only worth $1000, then nothing can be done.   If the creditor at any time conceives them to be worth more he can instantly secure his claim by proceeding in accordance with the statute.   If he chooses to remain inactive until the judgment debtor conveys, the loss is the result of his negligence.

As to the cases of *McDonald* v. *Crandall* and *Coe* v. *Smith*, relied on by the court below, it is enough to remark that in the first case the court expressly refer with approval to *Green* v. *Marks*, cited and relied on *supra* by us, and that the opinion in the latter simply refers to the former case as controlling it.

These were cases of voluntary conveyances to grantees of the person claiming the homestead right.  The case now before the court involves a sale *in invitum.*   This distinction would of itself be sufficient to demonstrate the inapplicability of these decisions.

But the court in these cases did by no means decide that a deed failing to release the homestead was, or could be, by and of itself, a valid conveyance of the title by virtue of which the grantee might maintain ejectment against the grantor, or his grantees occupying the premises under conveyances from him. They decide only that the irregular deed and the *surrender* of the premises to the *grantee* of that deed constituted an abandonment of the homestead to *that grantee,* so as to estop the claim of the grantor and all claiming through him. It was the concurrence of the voluntary deed and voluntary surrender that operated the destruction of the right.

In the case now before the court the possession was surrendered to the grantees of the deed under which plaintiff in error claims, and he was in possession thereunder when this suit was commenced.

[The learned counsel then went into an examination of decisions in New York, Iowa, Wisconsin, New Hampshire, and Minnesota, to show that the law as conceived by them was the law in every State where exemptions similar to those in Illinois existed.]

*Mr. Jackson Grimshaw, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

The rights of the parties to this suit depend upon the construction to be given the homestead laws of Illinois. These laws exempt from forced sale on execution the lot of ground and the buildings thereon occupied as a residence and owned by the debtor, being a householder and having a family, to the value of one thousand dollars. And the owner of the homestead, if a married man, is not at liberty to alienate it except with the consent of the wife, and there must be an express release and waiver of the exemption on the part of both to render the conveyance operative. A mode is provided for dividing the property, if divisible, in case its value exceeds one thousand dollars, and of selling it, if indivisible, and applying the proceeds in a particular manner.

As Spear did not pursue these modes of obtaining satisfaction of his judgment, although the homestead property was sufficient to pay his demand and set off to the debtor what he was entitled to under the law, the inquiry arises whether the proceedings which he did take operated to pass the title after the homestead was abandoned.

It is conceded that this inquiry must be answered if possible by the decisions of the Supreme Court of Illinois on the subject, for these decisions constitute a rule of property by which we are to be governed. Although the exact point in dispute has not been adjudicated by that court, yet certain general principles have been announced which in their application to this case we think relieve it of difficulty. The embarrassment encountered in the administration of this law has been chiefly owing to the fact that the exemption was confined to real estate of a limited value. If the exemption had extended to the entire lot of ground occupied as a homestead without regard to its value, it is easy to see that many troublesome questions which have arisen would have been avoided.

In order to reach a proper conclusion in this case, it is necessary to understand what is the nature of the homestead right. It cannot in an absolute sense be said to be an estate in the land; the law creates none and leaves the fee as it was before, but in substance declares that the right of occupancy shall not be disturbed while the homestead character exists. While this continues, the judgment creditor cannot lay his hands on the property, nor the husband sell it without the consent of his wife, and not then without an express release on the part of both, of the benefits of the law. The purpose of the legislature was to secure a homestead for the family, and the disposition of the property either by judicial sale or voluntary conveyance, was left unaffected except so far as was necessary to accomplish this object. As long as the property retained its peculiar character, it was within the protection of the law, but the exemption from sale under execution or by deed (except with homestead waiver) could

be. lost .by abandonment or surrender; that is to say, by acts *in pais.*

The Supreme Court of Illinois have recognized and applied these principles. in several recent cases, where the effects of voluntary conveyances by the owner of the homestead were the subject of consideration.

In *McDonald* v. *Crandall*,* it was held that where a conveyance is made not waiving the homestead, it passed the fee, but its operation was suspended until the grantor abandoned the premises- or surrendered possession, and that the homestead when occupied by the debtor as such, is not subject to the lien of a judgment. But the case decides that where the homestead exceeds one thousand dollars in value, a judgment becomes a lien and may be enforced against the overplus, and that the Homestead Act has not created a new estate, but simply an exemption.

In *Coe* v. *Smith*,† the facts of the case were these : The owner having a homestead right in the lot, made in 1858 a mortgage .without waiver of the homestead, and then in 1860 made another mortgage with waiver; afterwards, in 1861, he abandoned the premises. The court held that the first mortgage was the prior lien.

In *Hewitt* v. *Templeton*,‡ it was decided that. upon the abandonment of the homestead by the grantor, the grantee in a .deed in which the homestead right has not been waived is entitled to immediate possession, the homestead right being annihilated. The court in commenting on the decision in *McDonald* v. *Crandall*, which they say governs this case, uses this language: " We there held, although a judgment was no lien upon a homestead, where the premises were worth less than $1000, and a lien upon the surplus where they were worth more than that sum, yet, where the owner conveys the same by an absolute deed or mortgage legally executed, the fee in the premises conveyed, *no matter what their value*, passes to the grantee, subject only to the right of occupancy on the part of the grantor in case the

---

* 43 Illinois, 231.     † 47 Id. 225.     ‡ 48 Id. 367

homestead has not been relinquished, and when such occupancy terminates, the homestead right is annihilated, it not being an estate in the premises which can be transferred as against a former conveyance that has passed the fee."

If a conveyance by the occupier of the homestead without the release of his right as required by the law has the effect to pass the title, regardless of the value of the premises conveyed, and can be enforced as soon as the occupation of the homestead ceases, it is difficult to see why the conveyance by the officer of the law, instead of .the debtor, should not have the same effect.

And if, as between two voluntary grantees, the first takes the land discharged of the homestead after its abandonment, although the second conveyance contains a release of the homestead and the first does not, why should not the same rule obtain when the property was sold on judicial process, before the debtor conveyed it? The junior grantee takes nothing, because there was no estate to pass, it having been transferred by the first conveyance. On the same theory, there was no estate to convey after the sheriff had sold the land. The only difference between a conveyance made by the judgment debtor who has a homestead, and by the sheriff under a sale or execution against his land is, one is the act of the party, the other of the law—one a voluntary, the other an involuntary conveyance. It is certain that the owner of a tract of land of more than $1000 in value, on which there is a judgment, cannot sell it freed from the judgment, and although the homestead as such cannot be sold under execution, nor is a judgment a lien on the homestead as such, but as the land can be sold by the owner subject to the homestead, so a judgment is a lien on the land subject to the homestead, and the land or fee can be sold under execution subject to the homestead, and the purchaser, as in the case of a deed by the debtor without the waiver, has the absolute title when the homestead right ceases.

If these views of the law on this subject are correct, and we think they are fairly deducible from the decisions in Illi-

nois, they are conclusive upon the rights of the parties to this suit.

On the hypothesis that there was no judgment against Craddock, it is clear that if he had conveyed the lot or any part of it in 1858 (the date of the judgment against him), without the waiver of the homestead, and then in October, 1863, conveyed it with the waiver (as he did), and then left the premises (as he did), the deed of 1858 would bind the land.

It follows equally, that the deed of 1863 with the clause of the waiver, did not convey the absolute title to the west half of the lot, because there was a deed made by the law under a judgment of 1858, and which operated (just as a deed made by Craddock himself would have operated) upon the west half as soon as it ceased to be a homestead—that is by abandonment. And this is true while conceding that on neither hypothesis, that is deed without the waiver and sale under the judgment, could Craddock's homestead right be disturbed—his occupation of the lot.

JUDGMENT AFFIRMED.