R. A. Hicks, Adm'r, *v.* Mary D. Pepper *et al.*

NASHVILLE,......................DECEMBER TERM, 1873.

R. A. Hicks, Adm'r, *v.* Mary D. Pepper, et al.

1. Homestead. *Exemption of. Does not exist in favor of Widow and minor child. When.* The homestead exemption to the heads of families, created by the Constitution of 1870, Art. 11, § 11, and the Act of 1873, chapter 98, is a right contingent upon occupancy; so therefore when a widow with her minor child abandons the occupancy, she loses the benefit of the exemption for herself and minor child.

   Cases cited: Black *v.* Curran, 14 Wallace, Story on Conflict of Laws, § 46.

2. Same. *Same. To preserve the right to a minor. What necessary.* To preserve the right of homestead to a minor child, continued occupancy after the death of the mother is essential.

FROM ROBERTSON.

Appeal from decree of the Chancery Court. Chas. G. Smith, Chancellor.

James L. Watts appeared for the minor.

G. R. Scott appeared for Mrs. Pepper.

Stark & Judd appeared for Martin, and cited *Black* v. *Curran,* 14 Wallace, Story on Conflict of Laws, § 46.

Nicholson, C. J., delivered the opinion of the Court.

Young Pepper died in Robertson County, Tenn., in January, 1873, leaving his widow, Mary D., and an infant son, Young. He owned three tracts of land, one of eight acres, one of eleven acres, and one of eighty-nine acres, all adjoining each other. His residence at his death was on the eight-acre tract, adjoining to which was the eighty-nine acre tract; this latter tract was unimproved, except having on it a small cabin. The eight and eleven-acre tracts were incumbered with liens for unpaid purchase money, which have been enforced, and the two tracts sold.

The eighty-nine acre tract was under mortgage for $1,500 of borrowed money. The estate of Young Pepper was insolvent, and so suggested, and proceedings in Chancery instituted for its settlement under the insolvent laws. The widow, with her infant son, removed to Kentucky soon after the death of her husband, where she has ever since resided and continues to reside. In her answer to the administrator's bill, the widow claims dower in the eighty-nine acre tract, but makes no specific claim to a homestead. She prays that all her rights as widow be respected. The minor son, by his guardian *ad litem,* answers and sets up a claim to the homestead exemption.

The Chancellor held that the widow was entitled to dower, and, in addition, to the homestead exemption to the value of $1,000, and that the minor child was also entitled to have the benefit of the homestead. The land was ordered to be sold, and the value in money of the dower paid over to the widow, and, in

addition, $1,000 of the proceeds of the sale of the homestead, in accordance with the Act of 1873, chapter 98, and the residue to be paid to Martin, the mortgagee. Martin appeals specially from so much of the decree as gives the $1,000 for the homestead. The error in the decree of the Chancellor complained of here is, the giving to the widow and her minor son $1,000 for homestead exemption in addition to the dower.

It is necessary in the outset to settle the nature and character of the homestead exemption. This exemption is provided for and secured by the Constitution, Art. 11, Sec. 11, as follows: "A homestead, in the possession of each head of a family, and the improvements thereon, to the value of $1,000, shall be exempt from sale under legal process during the life of each head of a family, to inure to the benefit of a widow, and shall be exempt during the minority of the children occupying the same; nor shall the said property be alienated without the joint consent of husband and wife, when that relation exists," etc. It was not intended by the Constitution to alter or enlarge the title of the head of a family in the land in which the homestead exemption is secured. Whether the title is legal or equitable, it so continues in the head of a family during his life, unless alienated as provided by the Constitution. And, upon the intestate's death, the title descends to his heirs, incumbered with his widow's right of dower. As said by Judge Davis, in his opinion in the case of *Black* v. *Curran*, 14 Wall.,

R. A. Hicks, Adm'r, *v.* Mary D. Pepper *et al.*

469 : " It, the homestead exemption, cannot, in an absolute sense, be said to be an estate in the land; the law creates none, and leaves the fee as it was before, but in substance declares that the right of occupancy shall not be disturbed while the homestead character exists." The controlling object of the Constitutional provision, and of the statutes enacted to carry it out, is to protect the possession or occupancy of the homestead—the home of the family—from legal process, or from alienation of the husband without his wife's consent, during the life of the husband, and while this relation exists, and after his death, during the life of the widow; and upon her death to the minor children of the deceased husband, and until the youngest child reaches the age of twenty-one."

During all this time the homestead character exists and is exempt from the debts of the father, mother, or said children. But to preserve this exemption, the possession or occupancy of the premises is essential. Acts of 1870, chapter 80. Code 2,119*a*. The exemption is provided, not for the benefit of the head of the family alone, but for the benefit of the whole family, consisting of husband, wife and minor children; but it is only as occupants of the premises that this exemption continues. The husband, having no wife, may alienate the property, and thus relinquish the occupancy and the right of exemption, or he may release and extinguish the right by a permanent removal and abandonment of the possession of the homestead by himself and family: so also may the widow

lose the benefit of the exemption for herself and minor children, by abandoning permanently the occupancy. But to preserve this right by a minor child continued occupancy after the death of the mother is essential. The case before us must be determined by the application of these characteristics of the homestead exemption to the facts.

It appears that soon after the death of Young Pepper his widow, Mary D., removed to Kentucky, carrying with her their infant son, and there settled, with no intention of returning · and occupying the homestead. She thereby became a non-resident of the State, and relinquished her right to the homestead exemption, by voluntary, permanent abandonment of the premises. Having carried with her the minor child, as she had a right to do, the domicil of the child was changed, and its contingent right to the homestead exemption ceased, along with that of the mother.

It follows that, upon the removal of the widow with her child, and their acquiring a permanent domicile in Kentucky, the homestead ceased to be exempt from the ordinary operation of the laws of the State. It was subject to the widow's dower. This has been decreed to her, and there is no appeal from the decree. Subject to the dower, the land was open to be appropriated to the satisfaction of the debts of Young Pepper. In support of these conclusions we quote from the case of *Black* v. *Curran* the following: "As long as the property retained its charac-

ter, it was within the protection of the law, but the exemption from sale under execution, or by deed (except with homestead waiver), could be lost by abandonment or surrender, that is to say, by acts *in pais.*" The case of *Black* v. *Curran* involved the construction of the Illinois homestead law, which is substantially the same with ours.

The result is, that the decree of the Chancellor giving the wife and child $1,000 for homestead exemption, in addition to the dower, is erroneous, and is reversed, and the cause remanded to be proceeded in according to so much of the decree as was not appealed from. The costs of this Court will be paid by Martin, but it will be reimbursed to him out of the proceeds of the sale of the lands.