Flatt *v.* Stadler & Co.

JOHN W. FLATT *v.* MACK STADLER & CO.

HOMESTEAD. *Reversionary interest.* Under the act of 1879, the lands of a debtor may be sold subject to the right of homestead.

FROM M'NAIRY.

Appeal in error from the Circuit Court of McNairy county. G. H. NIXON, J.

Flatt *v.* Stadler & Co.

J. W. CHERRY for Flatt.

D. W. HERRING for Mack Stadler & Co.

DEADERICK, C. J., delivered the opinion of the court.

In October, 1882, defendants recovered judgment in the chancery court of Purdy for $492.25 against the complainant. Execution was issued and levied by the sheriff upon a small tract of land then owned and occupied by complainant, of less value than $1,000, and claimed as exempt from execution under the statutes made for the protection of heads of families and minors in and to a homestead of the value of $1,000. The land was advertised for sale subject " to the existing homestead rights," and to perpetually enjoin such sale, complainant filed his bill, with allegations showing his right to homestead, and that the value of the entire tract is not equal to the thousand dollars exempted by statute.

The complainant claims that the said land can not, under the statute, be sold for the satisfaction of the execution levied upon it.

The defendants demurred to the bill, and the bill and demurrer thereto present the single question whether defendants may sell, under their execution, the interest of complainant, subject to the homestead right?

It has been held in several cases by this court, that this interest may be subjected to the payment of the debts of the owner of the land, subject to the rights of homestead secured by the statute. It is insisted by complainant that these decisions were made

upon the law as it stood previous to the passage of the act of 1879, which changes the law in several material particulars, and inhibits the sale of any interest whatever in the land, by a creditor.

His Honor, the chancellor, so held, and' overruled the demurrer, and the defendant appealed to this court. The Referees recommend an affirmance of this decree, and the defendants have excepted to their report.

In our statute the declaration of the right of homestead is found in the Constitution of 1870, Article 11, section 11. The provision is in these words: "A homestead, in the possession of each head of a family, and the improvements thereon, to the value, in all, of one thousand dollars, shall be exempt from sale, under legal process, during the life of such head of a family, to inure to the benefit of the widow, and shall be exempted during the minority of their children occupying the same, nor shall said property be alienated without the joint consent of husband and wife, when that relation exists. This exemption shall not operate against public taxes, nor debts contracted for the purchase money of such homestead or improvements thereon."

The Legislature, in 1870, passed an act to carry into effect the provisions of the Constitution quoted, the first section of which is almost in the identical language of the Constitution: T. & S. Code, sec. 2114 *a*.

This court has repeatedly held that this constitutional provision and this legislative act were intended to protect the right of the use and occupation of the

land set apart as a homestead, and not to disturb the fee simple title, or equitable title, to the land itself: 4 Lea, 543; 1 Legal R., 22; 2 Lea, 579; 3 Lea, 203; 1 Baxt., 42.

In the last named case, Nicholson, C. J., who delivered the opinion of the court, said: "The controlling object of the constitutional provision, and of the statutes enacted to carry it out, is to protect the possession or occupancy of the homestead—the home of the family—from legal process, or from alienation by the husband, without his wife's consent during the life of the husband," etc., and cites the case of *Black* v. *Curran*, 14 Wall., 469, a case arising upon the Illinois homestead law, which is substantially the same as ours, under the act of 1870.

In that case Judge Davis said: "The homestead exemption can not, in an absolute sense, be said to be an estate in the land; the law creates none and leaves the fee as it was before, but in substance declares that the right of occupancy shall not be disturbed while the homestead character exists." And this has been the uniform holding of this court up to the present time, and consequently we have in the cases cited, and others not reported, that the fee remained unaffected, or rather not divested out of the owner, or vested in those claiming the exemption, and was therefore liable for the satisfaction of the debts of the owner, subject to the right of homestead.

And this construction was given the act of 1870, notwithstanding in some of its sections, if literally

Flatt *v.* Stadler & Co.

construed, it would seem to have been, in some contingencies, the intention of the Legislature to vest the title to the land itself in the beneficiaries of the act. For instance, in section 3 (T. & S. Code, sec. 2116 *a*), where real estate was levied on, homestead was to be set apart, and the remainder only of said lands "shall be subject to sale." This literally seems to prohibit the sale of the land set apart for homestead. And again, where the whole tract is sold, because not susceptible of partition, $1,000 was to be reinvested in a homestead, and when a certificate required by the act was registered, it was declared in the act that "when registered, it shall vest in the head of the family, his widow and minor children, as herein provided, a good and a valid title to the land, exempt from execution: Secs. 4 and 5, T. & S. Code, secs. 2117 and 2118.

But the very next section directs a course of descent inconsistent with the idea of an estate in fee, which the literal construction of the language employed in the latter part of the preceding section might warrant, yet it still recognizes the fee in the head of the family, and shows the object of the act to be to protect the husband, wife and minor children in the occupancy and use of the homestead.

But it is insisted that the act of 1879 materially alters and enlarges the rights of the beneficiaries, as they were held by this court to be, under the act of 1870, and vests them with an absolute estate in fee in the exempted property.

The act of 1879 is entitled: "An act to amend the homestead law by amending section 2110 *a*, 2114 *a* and 2116 *a* of the Revised Code." The first section provides "that section 2110 *a* of the Revised Code be so amended as to read, "a homestead, *or real estate* in the possession of *or belonginy to* each 'head' of a family, and the improvements thereon, *if any*, to the value, in all, of $1,000, shall be exempt from execution, attachment or sale under legal process, *and each head of a family owning real estate shall have the right to elect where the homestead or said exemption shall be set apart, whether living on the same or not*": See Pamphlet Acts, page 213.

By comparing the above with section 2110 *a* (T. & S. Code), it will appear that the purpose of the Legislature was to give the head of the family the privilege to take as his homestead that which he actually occupied, to which section 2110 *a* confined him, or at his election, to take other lands on which he did not live, and the true construction of said section 1 is, that the head of the family may elect "where the homestead or said exemption shall be set apart," upon any real estate he owns. But it is not intended, nor does the language imply, that the homestead or exemption is to be held by any different or more absolute character of title in the one case than in the other. The words italicized in the act of 1879 are added to section 2110 *a*.

Section 2 of the act of 1879, is in amendment of 2114 *a*, and provides that it be so amended as to read "a homestead (*or real estate*) in the possession of (*or*

*belonging to*) each head of a family, and the improvements, *if any*, etc., shall be exempt, as provided in the amended section, and then proceeds to provide that the exemption shall inure to the benefit of his widow and *children.* Then follow provisos identical with those in the amended acts.

The amendments consist in inserting the words " or real estate," " or belonging to," and " if any," which changes are intended to make this amended section conform to the provisions inserted in the first section, allowing the homestead in other real estate than that actually occupied by the head of the family; and in that part of the act as amended which gives the exemption in favor of the " widow and children," without restricting it, in words, to the minor children, or during their minority, as in the amended section.

It is argued that this gives all the children equally an exemption, and provides that it shall be exempt from sale, in any way, at the instance of the creditor.

Section 2116 *a* is re enacted in all respects by section 3 of the act of 1879, except that the head of the family, where his whole tract is levied on, if so desired by him, may have said homestead set apart elsewhere than out of the land including the mansion and outhouses.

The sections proposed to be amended were all specified and the amendments have been stated. It seems to us that the amendment designed was to allow the head of the family to locate his exemption upon any part of his real estate, and to relieve him from

the necessity of taking it upon the part actually occupied with the improvements.

The second section, it is true, uses the words, "his widow and children," as succeeding to the benefit of the exemption, yet we think it was intended to mean "minor children." And this opinion, we think, is sustained, not only from the manifest purpose of the act, to benefit the widow and dependent children, but from other parts of the act of 1870, which are not affected or changed by the act of 1879.

There is nothing in the act of 1879 which, without a very technical construction, shows any purpose to confer a fee simple estate. The Constitution and the acts of 1870 and 1879 all show a desire and pur-pose to secure a homestead, and the freedom from execution sale of the land has been construed by this court as intended simply as an exemption of the homestead right of use and occupancy from disturbance by said sale.

Section 2119 *a* of Thompson & Steger's Code, which section is not disturbed by the act of 1879, provides: "The homestead exempt in possession of the husband shall, upon his death, go to his widow during her natural life, with the products thereof, for her own use and benefit, and that of her family who reside with her, and upon her death shall go to the minor children of deceased husband, free from debts of father, mother and minor children, and when the minors die or arrive at age the land may be sold, and proceeds distributed amongst the heirs of deceased head of the family." This section shows that the exemp-

Flatt *v.* Stadler & Co.

tion contained in second section of the act of 1879, was in favor of the minor children, and was so understood and intended.

Section 2120 *a* of Code (T. & S.), being eighth section of the act of 1870, provides that on the death of the head of the family, without widow or minor children, the land may be sold for payment of his debts, etc.

These two sections last cited show that the fee remained in the head of the family, that title descended to his heirs-at-law discharged of the encumbrance of homestead when his widow died and his minor children attained full age. There is nothing inconsistent in the unamended sections of the act of 1870 with the act of 1879, which only by its amendment of the particular sections specified sought to re- move the restriction which was contained in those sections, which required the homestead to be set apart of that part of the owner's land then actually occupied by him as a homestead, no matter how much he might desire to have it located on other lands that belonged to him.

The whole of the acts upon this subject should be construed together as one act, and if there is any seeming conflict, it should be so construed as to give effect to the will of the law making power. But we think there is no real conflict in the object and design of the several statutes, nor any purpose by the act of 1879 to alter the then existing law further than to give the owner of the land the power to locate his homestead upon any part of it.

The result is, that the land is, in our opinion, liable to sale for the payment of complainants' debts, subject to the right of homestead. The exceptions to report of Referees will be sustained and the report set aside, the chancellor's decree reversed, the demurrer will be sustained and the bill dismissed.