GEORGE BLISS

*v.*

SAMUEL CLARK.

1. JUDGMENT LIEN—*homestead.* A judgment lien does not attach to a homestead. While premises remain exempt from levy and sale, under the homestead law, they are in the same situation, with reference to a judgment lien, as though no judgment existed against the owner.

2. LIEN—HOMESTEAD—*when a lien attaches to a homestead.* When the homestead exemption shall, from any cause, cease to exist, and the premises become liable to levy and sale, then the first levy thereafter will bind the property, whether the writ is issued upon a senior or a junior judgment.

3. So, where there were two judgments recovered against the owner of a homestead, at different times, an execution was sued out upon the junior judgment, and, while that execution was in existence, and the debtor still in the occupancy of the premises as a homestead, the debtor and his wife released to the plaintiff in the junior judgment their homestead right, and such release was followed by a levy and sale under the execution. Subsequently, and after the debtor had abandoned the premises, an execution was sued out upon the senior judgment and levied upon the premises, and they were sold. It was *held*, that, upon the execution of the release, the premises then, for the first time, became liable to levy and sale, and the execution issued upon the junior judgment being in existence, and the release followed by a levy and sale thereunder, all of the debtor's title passed to the purchaser at that sale, and could not be defeated by any subsequent sale under the senior judgment.

WRIT OF ERROR to the Circuit Court of McHenry county; the Hon. T. D. MURPHY, Judge, presiding.

This was an action of ejectment commenced in the court below, on the 19th day of December, 1863, by George Bliss, against Samuel Clark. A trial resulted in a finding and judgment for the defendant. The plaintiff thereupon sued out this writ of error.

The proofs in the case were stipulated to be as follows, on the part of the plaintiff:

1. The common source of title is Edward B. Conklin, who was, on the 2d day of December, 1857, seised, in fee, of the property described in the plaintiff's declaration.

2. That on the 2d day of December, 1857, the plaintiff, George Bliss, and others, recovered a judgment against said Edward B. Conklin, in the McHenry county Circuit Court, for the sum of $746.11; that soon thereafter, and within one year, an execution was issued on said judgment to the sheriff of McHenry county, in which county the land described in the declaration is situated, and afterward said writ of execution was returned to the clerk of said court wholly unsatisfied, for the want of property.

3. That, on the 6th day of July, 1861, an alias execution was issued upon said judgment, and the lots and property described in the declaration were, by the sheriff, levied upon; and, on the 31st day of July, 1861, the sheriff made sale of said lands, and the same were purchased by the plaintiff, and a deed given by the sheriff.

4. That, before the levy and sale of said property, on the execution in favor of said George Bliss and others, said Edward B. Conklin had left the property and left the State with his family, and taken up his residence in the State of Iowa, where he has ever since resided.

For the defendant:

1. That, on the 2d day of December, 1857, said Edward B. Conklin was a married man, having a wife and family, and these resided on the property in the house thereon, as the home-

stead of himself and family, and occupied the house as his homestead, and had done so for some time prior to that date, and that said homestead was worth less than $1,000.

2. That, on the 20th day of October, 1860, Ira D. Whipple recovered judgment against said Edward B. Conklin, in the McHenry county Circuit Court for $810; and, on the 10th day of December, 1861, an execution was issued on said judgment and delivered to the sheriff of McHenry county, and, on the same day, the sheriff levied upon the property described in the declaration; and, on the same day, said Conklin and Ann E., his wife, executed and delivered a release and waiver of their homestead right in the property, and the same was sold by the sheriff, and a deed given to the plaintiff in execution; and that, at the date of said release and sale, said Conklin and family were occupying said homestead.

3. That afterward said Whipple gave a deed to the defendant in this suit for the same property; and that said defendant, Clark, was in possession of the property at the time this suit was commenced.

It is agreed that neither debt in question was contracted for the purchase price of said property, nor any part thereof, nor for improvements or repairs upon the property described in the declaration in this suit, and that both debts were contracted after July 4, 1851.

The object of this stipulation was to present the facts of the case, as to whether the judgment of Bliss and others became a lien upon the property in question described in the declaration, so that the debtor, as owner of the homestead, could not release the same to be sold upon a subsequent judgment, and thereby defeat the present judgment.

Mr. E. S. SMITH, for the plaintiff in error.

Messrs. CHURCH & KERR, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This record presents the question, whether the ordinary lien of a judgment attaches to the lot of ground owned and occupied as a homestead, by a debtor who is protected by the act creating the exemption. The act declares that it shall be exempt from levy and forced sale under any process or order from any court of law or equity in this State, occupied as a residence, and owned by the debtor, being a householder, and having a family, to the value of one thousand dollars. It also provides, that such exemption shall continue after the death of such householder, for the benefit of the widow and family, some one of them continuing to occupy such homestead until the youngest child arrives at twenty-one years of age, and until the death of the widow. It likewise provides, that a release or waiver of such exemption shall not be valid unless it shall be in writing, subscribed by the householder and acknowledged as conveyances of real estate are required by law to be acknowledged. And the amendatory act of 1857 declares that the wife, if he have one, shall join in the waiver or release, to render it effectual.

It is agreed that Edward B. Conklin was, on the 2d day of December, 1857, the owner of the premises in controversy, in fee simple; that, on that day, plaintiff in error and others recovered a judgment against him in the McHenry Circuit Court, for the sum of $746.11; that within one year an execution was issued upon the judgment and was returned unsatisfied; that, on the 6th day of July, 1861, an alias *fi. fa.* was issued, and the premises were levied upon, which were sold on the 31st day of that month, and purchased by plaintiff in error, and a deed was afterward executed to him by the sheriff. It also appears that when this judgment was rendered Conklin was a married man, having a wife and family, who resided upon the premises, and occupied them as a homestead, and that the property was worth less than $3,000.

It is also agreed that on the 20th day of October, 1860, one Ira D. Whipple recovered a judgment against Conklin in the same court for $810, and on the 10th day of December, 1860, an execution was issued upon this judgment and placed in the

hands of the sheriff, who on that day levied upon the property; and on the same day Conklin and wife executed and delivered a release and waiver of their right to claim the homestead to Whipple, and the same was sold and a deed given by the sheriff to plaintiff in execution. That at the date of the release and sale, Conklin and family were occupying the premises as a homestead. Afterward, Whipple conveyed the premises to defendant in error, who was in possession when this suit was commenced. It is likewise agreed that neither debt was contracted for the purchase, nor for improvements or repairs on the property, and that they were contracted after the 4th day of July, 1851.

A lien may be defined to be a charge on property for the payment of a debt or duty, and for which it may be sold in discharge of the lien. Can it be said that the homestead is charged with the debt, and it may be sold to discharge the lien, when the statute has declared that it shall neither be levied upon nor sold while it is thus occupied? It is exempted from such a sale, which repels the idea that it is charged with the debt. It is true, that it may be levied upon and sold when it ceases to be a homestead within the meaning of the act, and so may personal property after the execution has come to the hands of the officer, but no lien can exist on the latter description of property until it is created by the delivery of the writ to the officer to execute.

At the common law the lien on personal property was created in the same manner, but it related back to the test of the writ. But to prevent hardship and injustice, the act of the 29 Car. 2, ch. 3, § 16, provided that a *fieri facias* or other writ of execution should bind the property of the goods of the defendant only from the time the writ should be delivered to the officer to be executed. But the lien neither at the common law nor under the statute, was created by the right to subject property to sale in satisfaction of the debt, but by the delivery of the writ.

The statute has authorized execution to issue upon a judgment of the Circuit Court, to any county in the State, and

when so issued the debtor's lands may be levied upon and sold, yet the judgment creates no lien beyond the limits of the county where the judgment is rendered. Until the execution is received by the officer, a lien does not attach to the lands in the hands of the debtor, nor as to *bona fide* creditors and purchasers until the officer has made and filed a certificate of levy with the recorder, as required by the twenty-fifth section of the chapter regulating judgments and executions.

At common law a judgment created no lien on real estate, nor could it be sold on execution. But as trade became developed and was fostered by the government, it was found necessary to subject it to the payment of debts. The first enactment having that object was the statute of Westminster 2d, adopted the 13th Edward I, ch. 18, which was usually called the statute *de mercatoribus.* It authorized the judgment creditor to sue out the writ of *elegit,* by which the sheriff was required to have all of the debtor's goods liable to execution appraised and delivered to the creditor in satisfaction of his debt, and if insufficient for the purpose, to deliver to him a moiety of his freehold estate until he should have execution of his judgment. The court in analogy to a *fieri facias* held that this writ created a lien on the real estate of the debtor from the test of the writ. Thus it will be seen, that it was the writ and not the judgment which created the lien. It is true, that the writ under the ancient English practice bore test of the date of the judgment, but still it was the writ and not the judgment which created a lien on the debtor's property. Then if the analogies of the law are to be observed, real estate not liable to a judgment lien or sale on execution until the happening of a particular contingency would, like the lien under the statute of Westminster 2d, become such only upon the delivery of the writ.

In the case of *Green* v. *Marks,* 25 Ill. 221, this court held, that the judgment lien did not attach to the homestead; that its exemption from levy and sale placed it beyond the operation of a lien. It was also held, that, while it remained exempt, it was in the same situation as though the judgment had never existed. The question then presents itself, when does a

lien attach? If the analogies of the law are followed, it, like personal property, or lands in a different county from that in which the judgment is recovered, becomes bound by the delivery of the writ to the officer to execute, after the exemption has ceased, and this without reference to the dates of the judg- ments. Land lying in a different county from that in which a judgment is obtained, like the homestead, is not affected by a lien; yet, before the statute required a certificate of levy, the levy by the officer created a lien without reference to the date of other judgments similarly situated. So with the homestead, after the exemption has from any cause ceased to exist, and it has become liable to levy and sale, the first levy by the officer· will bind the property, whether the writ is issued on a senior or junior judgment.

Then this property being neither subject to a lien, a levy or a sale, while occupied as a homestead, when it ceased to be protected by the statute it became liable to levy and sale under the first execution issued and levied. When the judgment debtor and his wife released the benefit of the homestead act by deed to the plaintiff in the junior judgment, the act then no farther exempted it from levy and sale. It thereby became liable to the execution on that judgment; and that execution being in existence when the release was executed, and followed by a levy and sale, all of the judgment debtor's title passed to the purchaser. Nor was it subject to be defeated by a sale under the senior judgment, nor did the sale under it affect the title acquired under the sale on the execution issued in favor of the plaintiff in the junior judgment. Defendant in error. having acquired title under that sale, plaintiff in error could only recover upon paramount title derived from some other source. Having obtained no title by his purchase under his execution, he thereby acquired no right to recover.

It was however insisted, that the removal of Conklin to Iowa was such an abandonment as rendered the premises liable to sale under the prior judgment. This is true; but, there being no lien, and the creditor being prohibited by the statute from levying or selling the property while it was occupied as a home-

stead, and the execution on the junior judgment being first issued and levied after it became liable to sale, the senior judgment became thereby postponed, and the execution on the junior judgment became preferred. The homestead act provides, that, in case the homestead is worth more than one thousand dollars, and is not susceptible of division, it may be sold, and that sum paid to the judgment debtor, and that the money shall be exempt from execution for one year. Suppose, in such a case, the debtor, after receiving the money, should remove to a different State, would any one suppose that it would change the right to hold the money exempt from execution? The statute has made no such exception or restriction. It is not even like the act exempting personal property from execution and attachment, as in that case such property is only exempt while the party is residing in the State or in removing from one county to another in the State.

In this case there is nothing appearing from which it may be inferred that the debt of the plaintiff in the junior judgment was not just and fairly owing; and it does appear that he paid the debtor a consideration to release the homestead right in favor of his execution. In this we perceive nothing inequitable or unjust. On the contrary, if the land, under the circumstances, was held liable to the prior judgment, the creditor in the junior judgment would be compelled to lose his money thus advanced, while the creditor in the prior judgment would reap all of the benefits resulting from the release to the creditor under the junior judgment.

Again, there seems to be no question of the right of the debtor coming within the provisions of the act, to hold the homestead right, as contradistinguished from the land itself, free from all lien. And that right is co-extensive with premises occupied as a homestead, to the value of $1,000. To this right, to hold and occupy to that extent, no lien can attach, as the statute has conferred the right and declared that the land shall be exempt from levy and forced sale so long as it is thus occupied. That the statute designed the premises, to the extent of $1,000, to be free from the operation of the lien, is manifest

from the fact that the excess over and above the value of that sum may be levied and sold in the mode pointed out by the act; and if not susceptible of division, then the entire premises may be sold, upon the creditor's paying $1,000 to the debtor, which is declared to be exempt for one year. If the right to occupy, or the land itself had been intended to be subject to the lien of the judgment, why not authorize a sale, subject to the right of the debtor to occupy it as a homestead?

If the judgment creditor may extinguish the right, for the purpose of subjecting the excess to his execution, why may not the occupant release and transfer the right to a judgment creditor? He has the right to occupy it so long as he is the head of a family; and on his death his family may occupy it until the death of his widow, or until his youngest child shall arrive at the age of twenty-one years. He may thus hold the creditor at arm's length, and effectually prevent him from rendering his debt of any practical use. If a lien was given we can see no benefit that could thereby result to the debtor, as the homestead right would prevent it from being rendered available. Then, in either view of the case, we have seen that the priority of a judgment gives no right to sell the land, so as to defeat the sale under the junior judgment.

For these reasons, we are of the opinion that the judgment of the court below must be affirmed.

*Judgment affirmed.*