PHINEAS W. HARTWELL *et al.*

*v.*

JONATHAN S. McDONALD.

1. HOMESTEAD—*in voluntary conveyance the title passes subject to the right.* It has been held by this court that where the owner of homestead premises conveys the same by deed or mortgage, without releasing the homestead right, the fee in the premises, no matter what their value, passes to the grantee, subject only to the right of occupancy on the part of the grantor; and when such occupancy terminates, the homestead right is annihilated, it not being an estate in the premises which can be transferred as against a former conveyance that has passed the fee.

2. SAME—*distinction between voluntary conveyance and a forced sale.* But this court has always made a marked distinction between cases of voluntary conveyance by the homestead occupant, and those of a compulsory conveyance by an officer of the law. It is not the mere homestead right of occupancy which is exempted from levy and forced sale, but it is the lot of ground occupied as a residence to the value of $1000.

3. This court has uniformly held that a judgment is not a lien upon homestead premises; that the owner may sell or mortgage the same free from the lien of the judgment, and that no liability can attach to the land in the hands of the purchaser for the previous judgment debt of his grantor.

4. SAME—*effect of judicial sale on title after abandonment.* Property is neither subject to a lien, a levy or a forced sale, under judicial process, while occupied as a homestead, and it does not vary the result whether the premises are worth more or less than $1000. If worth not more than that sum the sale is prohibited by the statute, and if worth more, and none of the requirements of the statute have been observed in making the levy and sale, then the sale is unauthorized and void, and no title passes.

5. SAME—*lien on surplus above value exempted can not be enforced in ejectment.* It has been held that, where the homestead premises have been sold under judicial proceedings, in disregard of the provisions of the homestead act, the purchaser acquired an equitable lien upon the surplus above $1000, which was exempted; but the purchaser acquires no legal title to such surplus which he can assert in an action of ejectment. The homestead can not be set off in this action.

6. SAME—*estoppel to assert.* The fact that the homestead occupant assigned his contract of purchase to his creditor, and afterwards, on completing his payments, fraudulently took a conveyance to himself from

his vendor, will not estop the debtor or his wife from afterwards assert-
ing their homestead right as against a sale of the premises under judg-
ment and execution in favor of such creditor. The assignment in such
case created only an equitable mortgage, and the homestead right not
being released, the creditor took his lien subject to that right.

7. In this case the premises, while occupied by the debtor, were sold
under judgment and execution against him. The premises exceeded in
value $1000, but no jury was called, and no part of the premises were set
off as required by statute. Afterwards the debtor ceased to occupy the
land, having acquired another homestead, and leased the premises to a
tenant. The creditor, after such abandonment, brought ejectment: *Held,*
that as the sale, when made, was unauthorized, he could not recover the
premises or any portion thereof.

APPEAL from the Circuit Court of Will county; the Hon.
JOSIAH McROBERTS, Judge, presiding.

Messrs. HILL & DIBELL, for the appellants.

Messrs. OLIN & PHELPS, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of ejectment, to recover possession of
the south half of block 152, in the village of Lockport, in
Will county, brought by McDonald against Hartwell; Maria
L. Norton, his landlord, having been admitted to defend, as
a co-defendant, during the trial.

The plaintiff recovered, and the defendants appealed.

The only question we find it necessary to consider, is that
of a homestead.

The plaintiff's claim of title was under an execution sale
upon a judgment rendered in the United States Circuit Court
for the northern district of Illinois, at the July term, 1857,
against D. C. Norton, the husband of Maria L. Norton; the
sale under the execution having been made January 30, 1858,
and the marshal's deed executed June 11, 1867.

At the time of the rendition of the judgment, the issuing
of the execution, and the levy and sale thereunder, the prem-
ises were occupied as a homestead by D. C. Norton, he hav-
ing received a written contract for a deed therefor from one

Singer. the owner of them, May 16. 1854, and having taken possession in that year with his family, receiving a deed from Singer June 25, 1857, and having remained continuously in possession for years thereafter. The record shows that D. C. Norton and his family have since removed from the premises and acquired another homestead. And the question which is made in regard to the homestead is this: Did the purchaser, at the execution sale, take any title which, upon the subsequent abandonment of the homestead, he could assert against these defendants in an action of ejectment?

In support of the affirmative of this proposition, appellee relies upon the decision of the Supreme Court of the United States in the case of *Black* v. *Curran,* 14 Wall. 469, which must be admitted to be an authority which fully sustains that view.

This court had held that where the owner of homestead premises conveys the same by deed or mortgage, without releasing the homestead right, the fee in the premises, no matter what their value, passes to the grantee, subject only to the right of occupancy on the part of the grantor; and that when such occupancy terminates, the homestead right is annihilated. it not being an estate in the premises which can be transferred as against a former conveyance that has passed the fee. *Hewitt* v. *Templeton et al.* 48 Ill. 367; *McDonald* v. *Crandall,* 43 Ill. 231.

In *Black* v. *Curran,* the court say, that it is difficult to see why the conveyance by the officer of the law, instead of the debtor, should not have the same effect; and they regard it as a logical sequence, that if, as between two grantees, by voluntary conveyances from the owner of the homestead, the first takes the land discharged of the homestead after its abandonment, although the second conveyance contains a release of the homestead and the first does not, then the same rule should obtain, when the property was sold under judicial process, before the debtor conveyed it.

But this court has always made a marked distinction between cases of voluntary conveyance by the homestead occupant, and those of compulsory conveyance by the officer of the law. The provision of the homestead law is, that "there shall be exempt from levy and forced sale, under any process or order from any court of law or equity in this State  *  *  *  *  the lot of ground and the buildings thereon occupied as a residence and owned by the debtor, being a householder and having a family, to the value of $1000." It is not the mere homestead right of occupancy which is exempted from levy and forced sale, but it is the lot of ground occupied as a residence.

This court has uniformly held that a judgment is not a lien upon homestead premises; that the owner may sell or mortgage the same free from the lien of the judgment, and that no liability can attach to the land in the hands of the purchaser, for the previous judgment debt of his grantor. It has been held that the property is neither subject to a lien, a levy or a forced sale under judicial process, while occupied as a homestead; that it does not vary the result, whether the premises are worth more or less than $1000; that if not worth more than that sum, the sale is prohibited by the statute; and if worth more, then, none of the requirements of the statute having been observed in making the levy and sale, the sale is unauthorized.

The sales referred to being, of course, such as are made without regard to the provisions of the act, as was the sale in this case, property thus situated is held not to be liable to levy and sale on execution, and such sales of it are held to be inoperative and void, and that the purchaser acquires no title thereunder. These principles and views have been held, to more or less extent, in such a large number of cases, that it would be too tedious to review them in detail, and we will content ourselves with a general reference to the following, among others, of them, which might be cited: *Green* v. *Marks*, 25 Ill. 221; *Fishback* v. *Lane*, 36 id. 437; *Silsbe* v.

*Lucas,* id. 462; *Blue* v. *Blue,* 38 id. 9; *Bliss* v. *Clark,* 39 id. 590; *Wiggins* v. *Chance,* 54 id. 177; *Hoskins* v. *Litchfield,* 31 id. 139; *Moore* v. *Titman,* 33 id. 358; *Wing* v. *Cropper,* 35 id. 256; *Conklin* v. *Foster,* 57 id. 105. In some of the cases, the enjoining of the making of judicial sales of the homestead was sustained; and in others, the setting aside of sales which had been made of the homestead premises, on the application of the homestead occupant, was sustained; all which, would be irreconcilable with the doctrine that the judgment creditor was lawfully entitled to levy upon and sell the fee, subject to the debtor's homestead right of occupancy, and that such right of occupancy was all that was exempt, and all that the debtor had a right to claim. We find in the cases no recognition of the idea, that there may be a forced sale under judicial process, of the fee of homestead premises, subject to the homestead right of occupancy.

Aside from the wording of the act, that there shall be exempt from levy and forced sale the lot of ground occupied as a residence, a justification of the distinction taken between involuntary and voluntary alienations, may be found in the fact, that if in the former case a judgment were held to be a lien upon homestead premises, and they liable to be sold under it, the homestead occupant might thereby be deprived of the opportunity of changing his home by disposing of his homestead, and with the avails acquiring a new one.

We adhere to the distinction which has been recognized, and the views which have been announced in our previous decisions; in accordance with which we must hold, that the execution sale in the present case, of the premises occupied at the time by D. C. Norton as a homestead, was inoperative and void, and that no legal title thereunder ever became vested in the appellee.

There is evidence that the premises were worth more than $1000; and it is urged that as to the excess over that sum, the sale was valid. It has repeatedly been held, that, in the action of ejectment, the value of the homestead premises is

wholly immaterial; that the right to the surplus above $1000 can not be enforced by ejectment, until the homestead has been set off, as the court in that action can not determine how far the homestead right will extend. *Smith* v. *Miller*, 31 Ill. 158; *Pardee* v. *Lindley*, id. 174; *Thornton* v. *Boyden*, id. 200; *Brown* v. *Coon*, 36 id. 243; *Richards* v. *Chace*, 2 Gray, 383. In *Blue* v. *Blue, supra,* it was held, that where the homestead premises were so sold in disregard of the provisions of the homestead act, the purchaser acquired an equitable lien upon the surplus.

As to whatever surplus there may be in the present instance over $1000, the appellee has no legal title thereto, which he can assert in this form of action.

It is claimed that there is an estoppel here, against the defense of a homestead; that it exists as against D. C. Norton, and that he is the real defendant instead of Maria L. Norton, who is only a nominal defendant.

The ground of the estoppel claimed is, an alleged fraud by D. C. Norton, in taking the deed from Singer to himself, instead of to McDonald, under the following circumstances: On the 8th of April, 1857, Norton assigned the Singer contract to McDonald, as collateral security for a debt owing by Norton to McDonald. At the expiration of the three years named in the contract, Norton completed his final payment, and took the deed from Singer to himself June 25, 1857, without the knowledge or consent of McDonald. All that McDonald really had was an equitable mortgage. At the time of the assignment of the contract to McDonald, Norton had a homestead in the premises; neither he nor his wife waived that homestead right; and McDonald having taken subject to the homestead right in the first place, no reason is perceived why there should be an estoppel against setting up the existence of such homestead at that time against him.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*