(*Circuit Court of Cook County. In Chancery.*)

## The Heirs of Hiram Hastings, Deceased,

### vs.

## Daniel G. Dorrance and William D. and Erwin D. Messenger and Wives.

1. HOMESTEAD—WHEN RIGHT OF CEASES. The mere fact that a party involuntarily ceased to occupy a homestead does not show that he intended to abandon the same. The presumption of the law is to the contrary.

2. HOMESTEAD EXEMPTIONS—ASSERTION OF LACHES DOES NOT RUN AGAINST. Inasmuch as the law exempts the homestead it is unnecessary for the debtor to manifest any intention to avail himself of its benefits. The ordinary rules of laches are also inapplicable.

3. SALE OF HOMESTEAD—NOT IN COMPLIANCE WITH STATUTE. The sale of a lot of ground occupied as a homestead, where the sale is not had in accordance with the homestead law, is inoperative and void and passes no title.

4. SAME—VOLUNTARY CONVEYANCE WITHOUT RELEASE OF HOMESTEAD. The voluntary conveyance of the homestead lot, without release of the homestead as provided by the homestead act, passes a title which becomes operative upon the abandonment of the homestead, and where the lot is worth more than $1,000, it passes the title subject to the homestead. There is a distinction between the case of a voluntary conveyance and a conveyance by operation of law.

5. JUDICIAL SALES—EQUITIES ARISING OUT OF. No equity can arise out of a purchase at a void judicial sale.

6. JUDICIAL SALES—LIEN ON HOMESTEAD—EXCESS OVER $1,000. The statutory right to subject the excess over $1,000 in a homestead to the satisfaction of a judgment does not constitute the judgment a lien on such excess.

7. SAME—LIEN AS TO EXCESS—GENERAL STATUTE. Nor does any such lien exist under the general statute as to judgments.

8. STATUTORY CONSTRUCTION—MODE PRESCRIBED BY STATUTE EXCLUSIVE. Where the statute specifies the particular mode in which a lot of ground used as a homestead may be sold, all presumption that the legislature intended it should be sold in any other way is excluded.

9. JUDICIAL SALES—PURCHASER AT, ACQUIRES NO EQUITABLE TITLE. A purchaser under an execution sale which is merely a statutory proceedings, acquires no equitable title.

10. EQUITABLE TITLE—DEFINED. An equitable title is where one has the right by reason of some equitable doctrine to demand a conveyance of the legal title to land held by another.

11. HOMESTEAD—EXECUTION SALES OF UNDER—NOT IN COMPLIANCE WITH STATUTE—RIGHT OF PURCHASER TO HAVE HOMESTEAD SET OFF OR IF INDIVISIBLE TO COMPEL DEBTOR TO ACCEPT $1,000. Where a sale by execution is had of a lot of land occupied as a homestead, which sale was not had in accordance with the statute in relation to homesteads, the court will permit the purchaser to have the homestead set off as against the judgment debtor, or if indivisible to be declared the absolute owner upon the payment of $1,000 to the judgment debtor.

12. HOMESTEAD—SALE UNDER EXECUTION AT A SACRIFICE NOT IN ACCORDANCE WITH STATUTE. If property subject to a homestead is sold at a sacrifice, by reason of the irregularity of selling without setting off the homestead, the purchaser should permit his sale to be set aside upon the payment of his judgment.

13. SAME—RIGHTS OF SUBSEQUENT PURCHASER. But where the purchaser re-sells the property to a *bona fide* purchaser, the court will permit the setting aside of the sale on the condition that the judgment debtor place the subsequent purchaser in *statu quo*.

14. JUDICIAL SALES—WHEN SET ASIDE FOR IRREGULARITIES. Where the judgment creditor sells a lot of land subject to a homestead, the fact that it is susceptible of division into two parts and should have so been offered for sale by the sheriff when taken into connection with the fact that the judgment creditor failed to notify his debtor that the homestead in which he had a large equity had been sold, makes such a case of wrong oppression and inequitable conduct on the part of the creditor that when

taken into connection with a gross inadequacy of price, calls loudly to a court of equity for relief.

15. JUDICIAL SALES—PURPOSE OF. The object of the statute in permitting a sale of real estate upon a judgment, is to enable a creditor to collect his debts, and not to enable him to speculate off his debtors misfortunes.

Bill and amended bill. Cross-bill and bill of review. Heard before Judge Murray F. Tuley. The facts are stated in the opinion.

*F. W. Forch, Jr.,* solicitor for complainant.

*Sleeper & Whiton,* solicitors for defendant Dorrance.

*Pliny B. Smith,* solicitor for defendants Messenger.

TULEY, J.:—

In 1843 Hiram Hastings purchased the E. ½ of lot 2, block 5, frac. sec. 15, addition to Chicago, and occupied the same as a homestead until the buildings thereon were destroyed by the big fire of 1871.

In the fall of 1875 he commenced the erection of the present building thereon, and before its completion occupied a portion of it for his homestead until his decease in the year 1880. Since then his widow has been and is now occupying the same, claiming homestead rights therein.

In the superior court of Cook county, on the 12th day of January, 1876, Edwin D. Messenger obtained a judgment against Hastings and sold the said E. ½ of lot 2, May 6, 1876, with the buildings, for the sum of $350, that being the amount of the judgment, interest and costs. The building on the lot covered the entire front, was four stories in height and in appearance was two distinct buildings of 40 feet front each, with stores below and separate entrances and stairs leading to the upper stories. Although the property had been mortgaged as two separate 40 feet lots, and was clearly susceptible of a division into two parts, it was sold *en masse* and without regard to the homestead rights of Hastings, if any he had. Whether or not Hastings had a homestead in this property at the date of this judgment is about the only question of fact in this case..

Without going into any analysis of the evidence, I will only

state my conclusion, which is, that he had at that date a homestead right in the lot and buildings thereon. His ceasing to live there in 1871, was involuntary, and his intent to retain the lot as a homestead must therefore be presumed. Although there is some evidence to show an abandonment, yet the weight of evidence tends to aid the presumption of the law of an *animus revertendi. Howard v. Logan,* 81 Ill. 383. My conclusion also is, that he was actually occupying the new building as a homestead at the date of the judgment.

On the 18th day of August, 1877, the execution sale ripened into a deed to Edwin D. Messenger, the purchaser at the sale. He quitclaimed an undivided three-fifths interest to his partner, William D. Messenger, on the 20th day of August, 1877, and the two joined in a deed to the defendant Dorrance, on the 30th of same month, which was filed for record in a few days thereafter. The consideration of the last mentioned deed was $2,123.42 cash, and the balance of the consideration of $13,000, was prior indebtedness.

The sheriff made a demand of payment before the levy, but there is no evidence to show that Hastings knew of the levy and sale or subsequent deeds thereunder, until a few days after the record of the deed to Dorrance.

This bill was forthwith filed by Hiram Hastings, to set aside the levy, sale, sheriff's deed and the subsequent deeds as clouds upon his title, upon the ground that the premises were occupied as a homestead, and none of the requirements of the statute as to the appointment of commissioners to set off the homestead, etc., having been complied with, the same was unauthorized and void; and also upon the further ground that the sale was irregular inasmuch as it was sold *en masse,* when it was susceptible of division into two parcels.

The defendant Dorrance files a cross-bill and offers to pay $1,000 for the homestead interest, if the court finds there was a homestead interest, and prays that he may be declared the owner of the property free therefrom.

The following questions of law arise:

1st. The lot of ground being occupied by Hastings as a homestead, and none of the requirements of the homestead act having been complied with, was the sale unauthorized and

void, and therefore failed to pass any right, title or interest to the purchaser at that sale?

2d. The equity of Hastings in the property—the same being under mortgage—being of the value of $25,000 at the time of the sale, is Dorrance entitled to the relief prayed by his cross-bill?

3d. If the sale passed the title to the property subject to the $1,000 homestead interest—does the fact that the sale was *en masse* and not in parcels entitle the complainants to have the sale and deeds set aside as against Dorrance, and if so, upon what terms?

4th. Have the complainants been guilty of laches?

It is evident that the decision of the first point in favor of complainants would render it unnecessary to decide the others, for if the execution sale was made without regard to the requirements of the homestead act, and therefore the sheriff's deed passed no title or interest in the property, it would be immaterial whether the sale was *en masse* or not. There could be no laches in asserting the exemption from levy and sale of the lot of ground occupied as a homestead.

"The law exempts the homestead, and the debtor is required to perform no act, to discharge no duty, nor even to manifest any intention to avail himself of its benefits. Hence the ordinary rules as regard laches, in parties failing to make their defense at law, or to bring suit in a reasonable time, are not applicable when homestead exemption claims are asserted." *Hubbell v. Canady,* 58 Ill. 425; *Pardee v. Lindley,* 31 Ill. 174, 186.

As to the effect of this sale under the execution, some thirty odd decisions have been cited, and I have studiously examined them all, and others not cited. I find that in the following cases bills have been filed to set aside sales under judgment, because the provisions of the homestead act were not complied with in making the sale, and the relief prayed for was decreed. *Green v. Marks,* 25 Ill. 221; *Hume v. Gossett,* 43 Ill. 297; *Conklin v. Foster,* 57 Ill. 104; *Hubbell v. Canady,* 58 Ill. 425. The sale was set aside on motion in *Stevenson v. Maroney,* 29 Ill. 532, and the right to have it done on motion

recognized in *Haworth v. Travis*, 67 Ill. 301. In *Kerr v. South P'k Comrs.*, 8 Bissell, 276, s. c. Fed. Cas. No. 7733, an execution sale of homestead was held void, on the authority of *Hartwell v. McDonald*, 69 Ill. 293. Sales were set aside upon bills filed in the following cases where there had been sales under foreclosure decrees, and in many of them the decrees went by default against the homestead claimant. *Hoskins v. Litchfield*, 31 Ill. 137; *Mooers v. Dixon*, 35 Ill. 208; *Cummings v. Burleson*, 78 Ill. 281; *Muller v. Inderreiden*, 79 Ill. 382; and on motion in *Moore v. Titman*, 33 Ill. 57.

In *Green v. Marks, supra*, the court says, "The legislature intended not only to free it (the lot of ground) from liability to sale, but from all lien while it remains a homestead." In *Hoskins v. Litchfield, supra*, where there had been a sale under a foreclosure decree without appointment of commissioners, etc., as required by the homestead act, the supreme court affirmed the decree of the lower court, "that the said premises stand in all respects as if no proceedings had been had under the mortgage."

In *Moore v. Titman, supra*, the court held that: If the premises ordered sold are worth more than $1,000, the master must proceed like a sheriff on execution to sell in the manner provided by the statute. In *Mooers v. Dixon, supra*, after decreeing that the sale and the deed thereon be set aside, the master was ordered "to proceed to sell the premises in the mode pointed out by the homestead act."

In *Conklin v. Foster, supra*, the premises were worth more than $1,000. There were two judgments, and the premises were sold under the senior judgment, and afterwards the owner of the homestead sold the premises to the junior judgment creditor. It was held, that "property thus situated is not liable to sale, and no lien by virtue of a judgment attaches to it," and "that the junior judgment creditor took the property free from all lien of the first judgment; a sale," says the court, "of such property being inoperative, the purchaser thereat takes no title."

In *Hartwell v. McDonald*, 69 Ill. 293, where the premises sold were worth more than $1,000, the court says: "It is not

the mere homestead right of occupancy which is exempted from levy and forced sale, it is the lot of ground occupied as a residence. This court has uniformly held that a judgment is not a lien upon homestead premises. * * * It has been held that the property is neither subject to a lien, a levy or a forced sale under judicial process while occupied as a homestead; that it does not vary the result whether the premises are worth more or less than $1,000, that if not worth more than that sum, the sale is prohibited, and if worth more, then none of the requirements of the statute having been observed in making the levy and sale, the sale is unauthorized, * * * property thus situated is held not liable to levy and sale on execution and such sales are held to be inoperative and void and that the purchaser acquires no title thereunder." And then cite with approval the case of *Green v. Marks, supra,* and nine other decisions of our supreme court as supporting the position taken.

The case of *Hartwell v. McDonald* is cited with approval in *Hartman v. Schultz,* 101 Ill. 437. And, it is again held, that "it is the lot of ground occupied as a residence which is exempt," and that where premises are not susceptible of division and exceed in value $1,000, "a sale * * * is invalid unless the provisions of the statute * * * are complied with" in making the sale.

It would seem that no language could be clearer or more positive than that used in the cases last cited, and that there should be no doubt but that the sale of a lot of ground—without regard to its value—occupied as a homestead where the sale is not had in the manner provided by the homestead law, is inoperative and void and passes no title.

There are, however, decisions of our supreme court, which, it may be argued, hold that where the homestead lot exceeds in value $1,000, a valid sale may be had of the excess of value over $1,000, without appointing commissioners or complying with the other provisions of the homestead act.

Among those decisions are a certain class growing out of voluntary conveyances of the homestead lot, without in the deed or instrument conveying the property, releasing the

homestead in the manner provided by the act. Of this class are *McDonald v. Crandall,* 43 Ill. 231; *Coe v. Smith,* 47 Ill. 225; *Hewitt v. Templeton,* 48 Ill. 367; *Mix v. King,* 55 Ill. 434; *Eldridge v. Pierce,* 90 Ill. 474; *Hotchkiss v. Brooks,* 93 Ill. 386.

These decisions lay down the principle that a voluntary conveyance of the homestead lot, without release of the homestead as provided by the act, passes a title which will become operative upon the abandonment of the homestead, and in case the lot is worth more than $1,000, it passes the title subject to the homestead.

The supreme court of the United States in *Black v. Curran,* 14 Wall. 463, in a case involving a title derived through an execution sale, (in Illinois), made without setting off the homestead, held, that the fee passed subject to the homestead, and comment on *Hewett v. Templeton* and *McDonald v. Crandall, supra,* and *Coe v. Smith,* 47 Ill. 225, and say "if a conveyance by the occupant of the homestead, without the release of his right as required by law, has the effect to pass the title, regardless of the value of the premises conveyed and can be enforced so soon as the occupation of the homestead ceases, it is difficult to see why the conveyance by the officer of the law instead of the debtor should not have the same effect."

"And if as between two voluntary grantees, the first takes the land discharged of the homestead after its abandonment, although the second conveyance contains a release of the homestead and the first does not, why should not the same rule obtain when the property was sold on judicial process before the debtor conveyed it, * * * the only difference between a conveyance made by the judgment debtor who has a homestead, and by a sheriff under a sale on execution against the land, is, the one is the act of the party, the other, of the law—one a voluntary, the other an involuntary conveyance."

But in the case before cited of *Hartwell v. McDonald,* 69 Ill. 293, where precisely the same question was before our court as in *Black v. Curran,* 14 Wall. 463, our supreme court

comment upon, and expressly disapprove of that case and say, "Our court has always made a marked distinction between cases of voluntary conveyances by the homestead occupant, and those of compulsory conveyance by the officer of the law," * * * and also that "it has been held that the property is neither subject to a lien, a levy, or a forced sale under judicial process while occupied as a homestead; that it does not vary the result whether the premises are worth more or less than $1,000; that if not worth more than that sum, the sale is prohibited by the statute, if worth more, then, none of the requirements of the statute having been observed in making the levy and sale, the sale is unauthorized," and cite, as supporting that doctrine, the following decisions of the court: *Green v. Marks,* 25 Ill. 221; *Fishback v. Lane,* 36 Ill. 437; *Silsbee v. Lucas,* Id. 462; *Blue v. Blue,* 38 Ill. 9; *Bliss v. Clark,* 39 Ill. 590; *Wiggins v. Chance,* 54 Ill. 175; *Hoskins v. Litchfield,* 31 Ill. 139; *Moore v. Titman,* 33 Ill. 357; *Wing v. Cropper,* 35 Ill. 256; *Conklin v. Foster,* 57 Ill. 104.

In addition to the decision of the U. S. Supreme Court in *Black v. Curran,* 14 Wallace *supra,* we have the following cases which are relied upon by the cross-complainant, Dorrance, as holding that there may be a valid sale of the excess in value over $1,000 without first setting off the homestead and, that being so, that he is entitled to the relief prayed by this cross-bill.

The first is *Loomis v. Gerson,* 62 Ill. 11, in which it appears there was a judgment on fine of $200 against the occupant of homestead, and upon execution the homestead was levied upon and sold upon the 21st of May, 1869, to Gerson, and two days after the sale, the judgment debtor sold the homestead premises to Loomis for $1,800. Gerson's purchase ripened into a deed, and he paid off two mortgages upon the property. Loomis, the grantee of the homestead occupant, filed his bill to have the sale under the execution and sheriff's deed to Gerson set aside and declared void, upon the ground, that the premises at the time of the sale were a homestead, and that the requirements of the homestead act had not been

complied with in making the sale. There was a demurrer to the bill which was overruled, and decree setting aside the sale. The supreme court holds that the circuit court did right in overruling the demurrer, and say, "the sale, however, should not be absolutely set aside. All that the judgment debtor has a right to claim is $1,000, and if the defendant prefers to pay that sum to the complainant, who stands in the shoes of the judgment debtor, he should be permitted to do so, and retain the title. For error in setting aside the sale absolutely the decree is reversed."

The case at bar would seem to be a parallel one to *Loomis v. Gerson,* except that in this case there are no mortgages paid off by the purchaser at execution sale. The decision in *Loomis v. Gerson* is not made to turn upon the right of subrogation, if any, or upon any equity growing out of the payment of the mortgages. In fact it would be difficult to see how that could make any difference in the rights of the holder of the execution title, if the mortgages were paid without the knowledge or consent of the person purchasing from the occupant of the homestead. The purchaser at the execution sale, either took title by such purchase or he took nothing, and it is difficult to see how he could take any title or interest by a purchase at a sale made without the requirements of the homestead being complied with, when such a sale was in the language of the prior decisions of the court unauthorized and void. How any equity could arise out of a purchase at a void judicial sale, it is rather difficult to discover.

This decision of *Loomis v. Gerson* was recognized in *Stevvens v. Hollingsworth,* 74 Ill. 202, an ejectment suit based on a title derived through an execution sale, where the court says, "Where a bill in chancery is filed to set aside a sale, on the ground that the property sold was the homestead of the complainant, the chancellor may, undoubtedly, in the exercise of the equitable powers with which he is invested, cause the property to be divided and set aside the sale only as to so much as shall be found, if the property be divisible, of the value of $1,000: or require the complainant, if the property be not susceptible of a division, to accept the $1,000 for

his homestead, if the purchaser shall elect to retain it and pay the amount, as has been held in *Loomis v. Gerson, supra.*"

*Loomis v. Gerson* cites no authority, *Stevens v. Hollingsworth,* in addition to *Loomis v. Gerson* cites *Linton v. Quimby,* 57 Ill. 271, which does not appear to be in point as the only question there was, whether the court below erred in refusing to set aside the sale as to four other lots, sold with the homestead lot, each lot having been sold separately. The court below did set aside the sale as to the homestead lot, although the evidence showed a value of $3,500—or in other words a "surplus" of $2,500.

The remaining case relied on by defendant is that of *Leopold v. Krause,* 95 Ill. 440.

The homestead had been sold on execution, the homestead act not being complied with in making the sale. The purchaser filed a bill to set aside certain deeds made by the judgment debtor as fraudulent and asked to be declared the absolute owner, the answer was, that the premises were a homestead, and the reply in argument was, that the homestead right was forfeited by the making of the fraudulent conveyances. The court after commenting on *Hartwell v. McDonald,* as holding such a sale void, say, that it was an action at law and followed the prior decisions of the court, which held, that the fee did not pass by such a sale; that "everything contained in that opinion must be limited in its application and meaning by a consideration of the case then under discussion;" that "the relief which may be had in a court of equity was not then under consideration," but was, in *Loomis v. Gerson,* 62 Ill. 11, and after quoting from that decision the court say, that *Loomis v. Gerson* was referred to with approval in *Stevens v. Hollingsworth,* 74 Ill. 202, and quote the language of the latter case, as hereinbefore recited; that the rule established in those two cases has never been directly disapproved or criticised since it was first announced; that "even were we dissatisfied with those cases, still they have become a rule of property, and we should hesitate to overrule them. But upon reconsideration of the question we think they are sustained by reason. A careful examination of the language of the statute will show, that it prohibits a

sale of the homestead only to the extent of the $1,000 in value, and contains no prohibition of the sale of the surplus over and above that amount.  *  *  *  The provisions as to the manner in which an execution sale is to be made, are simply directory and not prohibitory. It is not declared that a sale without setting off the homestead shall be null and void. Undoubtedly the debtor may insist upon the statute being complied with, and may in apt time, no doubt, apply to a court of equity to set aside the sale whenever a noncompliance with the statute has *injuriously* affected him.'' The opinion then argues that the provision of the statute requiring the homestead to be set off is manifestly principally for the benefit of the judgment creditor, and suggests that such sale may pass an equitable title in the surplus of value and entitle the holder thereof to file a bill for setting off the homestead, or the appointment of commissioners to make a division ''and perhaps for other equitable relief, yet this bill seeks no such relief;'' that there is no prayer to set off the homestead, no offer to pay $1,000; that ''the complainant has come for the aid of a court of equity, he should have it only on equitable terms,  *  '*  *  if by reason of the irregularity of selling without having the homestead set off, the property was sold at a sacrifice, complainant should permit his sale to be set aside upon payment of his judgment, if the parties in interest in the land are willing to pay the same.''

I have reviewed and quoted thus liberally from the supreme court decisions, that it may be seen how irreconcilable they are. It is another illustration of the dilemma in which the *nisi prius* judge often finds himself in attempting to arrive at a conclusion from the decisions of our supreme court. If I decide in favor of the principles land down in the first and by far the most numerous class of the decisions referred to, complainants are entitled to a decree setting aside the sale of this property upon the payment of $350 with interest. If I decide in favor of the principles declared in the three decisions last mentioned, the defendant, Dorrance, is entitled to this property of the net value of $25,000 to $30,000 upon the payment of $1,000.

Does the fact, that the act of 1873 created an estate of

homestead, whereas the prior acts only recognized an exemption, make any difference as to the principles of law, or the decisions governing the case? A construction of the new statute of 1873, is found in *Hotchkiss v. Brooks*, 93 Ill. 386, which was a bill filed by Hotchkiss against Sarah Brooks, to have her homestead interest in a lot which he acquired by deed from her husband, set-off, and if the property was not divisible, then that appraisers might be appointed, and if the appraisement should exceed $1,000, then that defendant be required to take $1,000 and surrender possession. Brooks had separated from his wife and abandoned the homestead. The property was appraised at $4,750, and decree went in favor of complainant. The supreme court say "It is true the right conferred upon a party who occupies a tract or lot of ground as a homestead, under the act of 1857, was a mere exemption, and it is also true, that, by the act of 1873, an estate of homestead was created; but, aside from the fact that one is called an exemption and the other an estate, it might be difficult to determine the difference between the two, in so far as the rights and privileges conferred upon appellee in this case are concerned. Under the one statute, the rights conferred seem to be as great as under the other; and we perceive no reason why a decision made under the old statute would not be applicable under the new one."

The year before the decision last quoted, to wit: in 1878, Justice Scholfield in *Eldridge v. Pierce*, 90 Ill. 474, reviews the two acts of 1857 and 1873, in a very able manner, pointing out the effect of the change from an "exemption" to an "estate" of homestead. In that case, the occupant of the homestead lot made a mortgage without release of the homestead right, and subsequently made two other mortgages with release of homestead right. He subsequently surrendered possession to the last mortgagees. A bill was filed by first mortgagee to foreclose, who alleged that there had been an abandonment of the homestead and that therefore the second mortgagees were in all respects subordinate to his. The court referred to the prior statutes exempting from levy and forced sale, the lot occupied as a homestead and say "it was held

that this did not create a new estate, but simply an *exemption;* and where the holder of the homestead conveyed without relinquishing the exemption, he transferred the fee, but the operation of the deed was suspended until the premises were abandoned or possession was surrendered." *McDonald v. Crandall,* 43 Ill. 231; *Coe v. Smith,* 47 Ill. 225; *Hewitt v. Templeton,* 48 Ill. 367; *Hartwell v. McDonald,* 69 Ill. 293. And also, "that the exemption did not affect the rights of heirs or devisees," citing: 70 Ill. 263, 72 Ill. 24, 80 Ill. 84, and 76 Ill. 541. "The phraseology of the act in force July 1, 1873, leaves no room for doubt," says the court, "that the general assembly designed to change the law in both these respects. To meet the objection that the former acts created no new estate, it expressly declares that 'every householder,' etc., shall be entitled to an *estate* of *homestead* to the extent in value of $1,000—thus creating a new estate; and, to meet the objection that the former exemption did not affect the rights of heirs and devisees, it declares that such homestead (*i. e.* the estate of homestead to the extent in value of $1,000) shall not only be exempt from attachment, judgment, levy or execution, sale for the payment of debts, or other purposes, but that it shall also be exempt from the laws of conveyance, descent and devise, except as therein provided."

After commenting on the change made by the 4th and 6th sections, the court proceeds, "it would be difficult to employ language more clearly expressing that the householder is now invested with an estate, (one before unknown to the law of homestead), to the extent in value of $1,000, which can only be incumbered or aliened in the mode prescribed by the statute. Where the property in which this estate exists exceeds in value $1,000, the excess is plainly unaffected by the estate, that is to say, the excess is liable to the same lien of judgment, attachment, etc., and to be aliened in the same manner that other real property of the householder is. Where, however, the property does not exceed in value $1,000, the estate embraces the entire title and interest of the householder therein, leaving no separate interest in him, to which liens can attach or which he can alien, distinct from the home-

stead.'' Also ''that abandoning or surrendering possession *pursuant to the conveyance* of the property, is not an abandonment of the estate of homestead.''

In the case of *Browning v. Harris,* 99 Ill. 456, which was a bill to foreclose a mortgage; there was no release of homestead property worth less than $1,000, and no possession was given, nor was there any abandonment. Justice Mulkey reviews the new act, the effect of the change of the exemption to an estate, and affirms the doctrine of *Eldridge v. Pierce,* 90 Ill. *supra.*

Without desiring to criticise the supreme court, it appears to me that some confusion has arisen, in the decisions made under the homestead act, as it existed prior to 1873, by the statement in some of the decisions, of a principle unnecessary to the case before the court:—That where the value of the lot occupied as a homestead, exceeded $1,000, a judgment was a lien upon the ''excess'' or ''surplus'' or ''residue'' or ''overplus,'' over and above $1,000, as in *McDonald v. Crandall,* 43 Ill. 231; *Haworth v. Travis,* 67 Ill. 301, and others. If the judgments were a lien on the lot of ground, if worth more than $1,000, why were they not a lien and capable of enforcement in the order of their priority, when the lot of ground worth less than $1,000 was abandoned as a homestead? Our supreme court following the logical sequence of the doctrine declared in *Green v. Marks,* held where there were two judgments and the debtor abandoned the homestead, not the senior judgment, but that the junior judgment creditor who had made the first levy would be entitled to priority. *Bliss v. Clark,* 39 Ill. 590.

Whatever may be the effect of the change of the law making what was before an ''exemption'' an ''estate of homestead'' as to the ''excess'' in value over $1,000, I think it must be conceded, that it was not correct to call the statutory right to subject, in the manner pointed out by the statute, this ''excess'' or surplus value to the satisfaction of the judgment a lien upon such excess or surplus.

It was no more a lien than is the right of a mechanic to enforce a claim against a building, a lien, until it is judicially

ascertained and declared to be such,—it is no more a lien than is a judgment in Cook county a lien on lands of the debtor in Kane county, yet the latter may be sold upon the judgment in the mode pointed out by the statute; or than is a judgment a lien on personal property.

As Justice Walker says, in the leading and very able decision upon the homestead law, *Green v. Marks, supra,* the only right to proceed against the lot of ground occupied as a homestead is given by the statute and "the statute is silent as to any lien." The proceeding to sell the lot of ground occupied as a homestead is purely a statutory proceeding.

The title to land could not be divested by any proceeding upon a judgment at common law, and the right to divest a debtor of his title to the lot of ground occupied as a residence where its value exceeds $1,000, being a purely statutory right, the mode pointed out by the statute and none other, must be pursued.

Nor does the fact that the new statute creates an estate of homestead in my opinion make a judgment a lien on the excess of value over $1,000. The general assembly in passing the act were legislating as to the manner in which the lot of ground occupied as a homestead might be aliened, pass by devise or descent, or be sold upon judgment or decree, and as to the best means of preserving the homestead to the debtor, his wife and family.

Having failed to declare a judgment or decree to be a lien on the lot or any portion of it, it can only become a lien on the excess or surplus value by virtue of the general statute making judgments and decrees liens upon all the real estate of the debtor, but where the legislature singles out particular property and legislates as to that, can it be said that the statute provisions as to liens on the real estate generally of all debtors shall be held to apply to that particular property? I think not! If the lien arises as to the surplus value by reason of the general statute as to judgment liens, I can not see why—as the homestead interest is a conditional estate liable to cease upon abandonment—the judgment is not also

a lien upon the fee, subject to the homestead without regard to the value of the homestead.

It does not, however, necessarily follow that if the judgment is a lien on the interest of the debtor, which is in excess of $1,000, the value of the homestead interest, that such property or such excess can be sold in any other manner than that provided by the homestead act.

A specification of the particular mode in which the lot of ground used as a homestead may be sold on execution, where its value exceeds one thousand dollars, excludes all presumption that the legislature intended it should be sold in any other manner.

It will be noticed, that while the general assembly changed the old law by creating an estate of homestead in place of an exemption, yet in those section (now sections 9, 10, 11 and 12 of the law of 1873) relating to the sale on execution where premises occupied as a homestead exceed in value $1,000, no change was made. All the prohibitions against the sale of the lot for a less sum than $1,000, and all the requirements as to setting off the homestead, if it can be done—if not, then the appraisement to be made; notice to be given to the debtor to pay on the judgment the excess of appraisement over $1,000 within sixty days—all remain in the new law precisely as in the old law.

In this regard the decisions under the old statute holding the sale, without complying with the homestead act, to be unauthorized and void and to pass no title, are just as applicable under the present statute as under the prior ones. While there is some language in the opinions in *Eldridge v. Pierce,* *supra,* and *Browning v. Harris,* 99 Ill. 456, construing the new homestead act of 1873, which appears to be to the effect, that the surplus value may be sold without regard to the homestead act, yet in both those cases the conveyances were voluntary, and the question as to the right to sell the surplus without first setting off the homestead, or if indivisible, having an appraisement, etc., was not before the court.

I confess that I am utterly unable to comprehend the equities and equitable rights which the court appear to desire to

establish in the three cases in the 62, 74 and 95 Illinois. I can not understand how a purchaser under an execution sale, purely a statutory proceeding, can acquire an "equitable title" to the surplus in value over $1,000. It appears to me, that where a judgment debtor has a legal title to land, that the title acquired by a purchaser at an execution sale of that land must be a legal title and can not be an equitable title. He acquires a legal title, or he acquires no title. A legal title passes or no title passes. An equitable title is where one has the right by reason of the application of some equitable doctrine to demand a conveyance of the legal title to land held by another. As for instance, where a guardian has purchased property of his ward the day after he acquires his majority; and where one buys land, supposing he is acquiring the legal title, and the owner of the legal title silently and fraudulently stands by and sees him make the purchase.

What equitable maxim or doctrine can be invoked, which will make the sale of the homestead lot which is an unauthorized and void act, passing no title when the purchaser seeks to enforce it in a court of law, 69 Ill., a valid and authorized act passing an equitable title, 62 Ill., when the purchaser comes in to a court of chancery? How can any equity arise from or be founded upon, a violation of statutory provisions?

This doctrine that a sale of the lot occupied as a homestead, without setting off the homestead carries the title subject to the homestead right of $1,000, asserted in *Loomis v. Gerson,* and *Stevens v. Hollingsworth, supra,* is declared in *Leopold v. Krause, supra,* to have become a rule of property,—what am I to do with exactly the opposite rule of property declared in more than a score of decisions commencing with *Green v. Marks, supra,* and ending with *Hartwell v. McDonald, supra,* and recognized and reaffirmed as good law in a case still later than the 95 Ill., to wit: *Hartman v. Schultz,* 101 Ill. 437.

It is a noticeable fact that in each of the three cases of *Loomis v. Gerson, Stevens v. Hollingsworth* and *Leopold v. Krause,* so much of the opinion as is in opposition to the hitherto well established rule of property, that such a sale as

was made in this case is unauthorized and void, will be found upon examination to be *obiter* of the court, or at least, so much in the nature of *obiter* as not to demand that it be followed, certainly not, in opposition to the long line of cases cited, *ante,* holding a contrary doctrine. In *Loomis v. Gerson,* the owner of the homestead after judgment had sold the property, and the purchaser applied to have the sale set aside absolutely. In *Leopold v. Krause, supra,* the bill was filed by a purchaser under execution to set aside certain conveyances made by the homestead occupant, as fraudulent, while the other case of *Stevens v. Hollingsworth,* was an action of ejectment, and the question as to what relief could be had in equity was not before the court.

So that as yet, the supreme court has never sustained a bill by a purchaser at an execution sale, made without following the requirements of the homestead act, seeking as against the judgment debtor, to have set off the homestead, or if indivisible, to be declared the absolute owner, and entitled to possession on the payment of $1,000. Until the supreme court has sustained a decree granting that specific relief, I do not feel called upon to follow the doctrine laid down in the three cases commented upon, in opposition to the rule of property established by so many of its other decisions, and so much opposed to my own judgment.

The case of *Kerr v. S. P. Com'rs,* 8 Bissell, 276, Fed. Cas. No. 7733, was upon a bill in chancery, and in that case the U. S. court followed *Hartwell v. McDonald, supra.* That decision has since been affirmed by the supreme court of the United States, and as before stated, our own supreme court have again recognized the doctrine of *Hartwell v. McDonald* upon a bill in chancery to set aside the sale of the homestead, in the case of *Hartman v. Schultz, supra.*

The cross-bill in this case will give the supreme court the opportunity, upon a bill praying the specific relief, of deciding, whether on an execution sale, made without complying with the Homestead Act, the homestead occupant can be turned out on the payment of the $1,000.

The court in *Leopold v. Krause, supra,* has held in oppo-

sition to a long line of prior decisions hereinbefore referred to, that the provisions of the homestead act, as to the setting off the homestead and the appointment of commissioners, where the value of the lot exceeds $1,000 are merely directory, and not mandatory, but have not held, that section 9 of the act which reads as follows: "No sale shall be made of the premises on such decree or *execution* unless a greater sum than $1,000 is bid therefor" is also merely directory. The case of *Hartman v. Schultz, supra,* holds, that it is prohibitory of any sale, except for a greater sum than $1,000, and I think any court considering the strong language forbidding the sale in section 9, in connection with sections 10, 11 and 12, would be justified in this case, where the bid was only $350, in following *Hartman v. Schultz, supra,* rather than *Leopold v. Krause, supra,* and in pronouncing this sale void, passing no title.

But even if I felt compelled to follow *Leopold v. Krause,* relief might be granted the complainant in this cause. That case qualifies the doctrine of *Loomis v. Gerson, supra,* and *Stevens v. Hollingsworth, supra,* by holding, that if the property is sold at a sacrifice, by reason of the irregularity of selling without setting off the homestead, the purchaser should permit his sale to be set aside upon the payment of his judgment. Not only was this property worth, net, $25,000 to $30,000, sold for $350, but no such sale, it can be supposed, would have been permitted by Hastings, had an appraisement been had, and the sixty days prior notice given to him, as provided by the homestead act. As Dorrance has purchased since the sheriff's deed was made, having no other notice than that derived from the occupation of the Hastings, the relief could only be granted, on condition that the complainants pay him the amount of cash paid by him, $2,132, and interest, to which extent only would he be considered a *bona fide* purchaser for value.

But I prefer to present the case to the supreme court, whether or not, such an execution sale is not both at law and in equity unauthorized and void and "passes no title."

As to the other points it is unnecessary to decide them; but

I will say that I have carefully considered all the authorities cited, and am of opinion, that if the judgment creditor could sell the lot of ground subject to a homestead as this was sold, the fact that it was susceptible of division into two parts, and should have been so offered for sale by the sheriff, when taken in connection with the fact, that a part of the building was occupied as a homestead and with the fact that the judgment creditor who became purchaser, carried on business within 200 feet of the lot sold, and knew Hastings, and saw him every few days, but failed to notify him that his homestead, in which he had an equity of at least $25,000, had been sold and bought in by him for $350, makes such a case of wrong, oppression and inequitable conduct on the part of the creditor, that taken in connection with the gross inadequacy of price, calls loudly to a court of equity for relief. It is a case that falls clearly within the principles laid down by our supreme court in *Morris v. Robey,* 73 Ill. 462; *Hay v. Baugh,* 77 Ill. 500; *Bradley v. Luce,* 99 Ill. 234; *Cassidy v. Cook,* 99 Ill. 385. The object of the statute in permitting the sale of real estate upon a judgment, is to enable a creditor to collect his debt, and not to enable him to speculate off his debtor's misfortunes.

Let the decree be prepared setting aside the execution sale and deeds issued upon and subsequent thereto; also setting aside the satisfaction of the judgment, and requiring the complainants to pay into court the amount bid at the sale, $350, with interest thereon, cross-bill to be dismissed; each party to pay his own costs.